(No. 50913.—▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JAMES E. TAYLOR, Appellant.

*Opinion filed June 8, 1979.*

Mary Robinson, Michael Mulder, and Ralph Ruebner, of the Office of the State Appellate Defender, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, Melbourne A. Noel, Jr., and Gerri Papushkewych, Assistant Attorneys General, of Chicago, and William L. Browers, of the State's Attorney's Appellate Service Commission, of Elgin, of counsel), for the People.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On December 9, 1976, defendant, James Earl Taylor, was convicted in a bench trial of burglary, armed robbery and rape, and was sentenced to concurrent terms of 6 to 18 years for the two latter offenses. Defendant was 16 years old when the crimes were committed and 17 at the time of trial. On August 12, 1976, before defendant's criminal trial, the circuit court of Winnebago County had held a transfer hearing pursuant to section 2—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—7(3)) and at its conclusion had ordered that defendant be tried as an adult for the crimes charged. On appeal, defendant argued that the statute permitting transfer of juveniles to criminal court was unconstitutional in that it denied juveniles due process of law; that the trial court should have suppressed a confession defendant gave police; and that the evidence at defendant's trial had been insufficient to prove his guilt beyond a reasonable doubt. The appellate court found the transfer statute constitutional, but agreed with defendant that his confession should have been suppressed. That court therefore reversed and remanded, finding no need to consider whether the evidence at trial had been sufficient to support defendant's conviction. (61 Ill. App. 3d 37.) We allowed defendant

leave to appeal.

At trial the complaining witness, a 70-year-old woman who lived alone, testified that one night in late July 1976 an intruder broke into her home by removing the dining room window screen. She heard a noise and, turning, saw a black man sitting in the window. When she ran to the front door screaming, the man stopped her, pulled a knife and threatened to kill her if she screamed again. He then tied her hands, covered her head and raped her. Next he made her get her purse and went through it while sitting on top of her. The last time she knew, several months earlier, the purse had contained $2,000 and she never took it out of the house. After the intruder left, the money was missing. The witness could not identify defendant, but the dining room window screen, found outside the home, had defendant's fingerprint on it.

Defendant was arrested at 9:30 on the morning of July 30, 1976. He was given incomplete *Miranda* warnings and questioned. When defendant asked to talk to an attorney, he was allowed to place a call and, receiving no answer, leave a message. Questioning continued. The attorney returned defendant's call and refused to take the case. Defendant told police "he would rather have Mr. Olson but he didn't know who to get now"; he was upset and crying. Questioning nevertheless continued, and defendant gave a signed statement at 3 p.m., admitting that he went to the victim's house with another man, but stating that he ran away when the other entered. At 10:45 that night defendant gave another signed statement, admitting the burglary and armed robbery but denying the rape. At sometime during the giving of this statement defendant asked whether he should have an attorney and was told that it was up to him. At 10:30 the following morning defendant was given full *Miranda* warnings and he signed a waiver form. The officers present testified that he made no specific request for an attorney. He thereafter

gave an oral statement admitting the rape as well as the other offenses. The trial court held the first two confessions inadmissible because police elicited them after defendant had requested an attorney. The court held the third confession admissible, however, because defendant had validly waived his right to counsel. The appellate court reversed, holding that the State had not met its "heavy burden" of showing that defendant had waived his previously invoked right to counsel. 61 Ill. App. 3d 37, 44.

Section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702—7(3)) provides:

"(3) If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, and, on motion of the State's Attorney, a Juvenile Judge, designated by the Chief Judge of the Circuit to hear and determine such motions, after investigation and hearing but before commencement of the adjudicatory hearing, finds that it is not in the best interests of the minor or of the public to proceed under this Act, the court may enter an order permitting prosecution under the criminal laws.

(a) In making its determination on a motion to permit prosecution under the criminal laws, the court shall consider among other matters: (1) whether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority. The rules of evidence shall be the same as under Section 5—1 of this Act."

Defendant argues that the statute denies juveniles due process in that (1) the judge is not required to state his

reasons for ordering the transfer; (2) no standard of proof is articulated; (3) the relaxed rules of evidence used at dispositional hearings are prescribed; (4) the judge is not required to weigh the specified criteria according to a set formula; (5) the juvenile may not appeal a transfer order until after his trial. In sum, defendant contends that the statute does not adequately safeguard the juvenile's rights at a critically important stage of the proceedings against him because it does not sufficiently circumscribe the untrammeled and potentially arbitrary discretion of the judge.

We do not agree that the statute is constitutionally deficient. The starting point for any due process analysis of juvenile transfer statutes is *Kent v. United States* (1966), 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045. Interpreting the requirement of "full investigation" in the District of Columbia Juvenile Court Act, and recognizing the "critically important" nature of the transfer proceedings to the juvenile, the Supreme Court there held that certain procedural safeguards must attend a decision to transfer:

> "[W]e conclude that, as a condition to a valid waiver order, petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." (383 U.S. 541, 557, 16 L. Ed. 2d 84, 95, 86 S. Ct. 1045, 1055.)

Although the *Kent* decision rests primarily on statutory construction, the suggestion that the safeguards outlined there were guaranteed by due process was reinforced by a subsequent reference to *Kent* in *In re Gault* (1967), 387

U.S. 1, 30, 18 L. Ed. 2d 527, 547-48, 87 S. Ct. 1428, 1445. As the United States Court of Appeals for the Fourth Circuit has said:

> "Whether *Gault* and *Kent*, taken together, form a constitutional imperative as to juvenile waiver proceedings is not self-evident. However, *Kent* and *Gault* do make it unquestionably clear that juvenile court proceedings that affect a young person's substantial rights 'must measure up to the essentials of due process and fair treatment' [*In re Gault* (1967), 387 U.S. 1, 30, 18 L. Ed. 2d 527, 548, 87 S. Ct. 1428, 1445]." *Kemplen v. Maryland* (4th Cir. 1970), 428 F.2d 169, 173.

See *In re Beasley* (1977), 66 Ill. 2d 385, 391.

The statute challenged here became effective on October 1, 1973. Under prior law, transfer of juveniles to criminal court had been largely a matter of prosecutorial discretion. (Ill. Rev. Stat. 1971, ch. 37, par. 702–7(3); *People v. Sprinkle* (1974), 56 Ill. 2d 257.) Unlike the prior law, the present statute closely parallels the District of Columbia transfer statute as interpreted by the Supreme Court in *Kent*. Indeed the council commentary to the new provision indicates that the statute was amended in response to the *Kent* decision. (Ill. Ann. Stat., ch. 37, par. 702–7, Council Commentary, at 81 (Smith-Hurd Supp. 1979).) The six criteria that the statute sets out for the judge to consider closely follow the District of Columbia criteria set out in an appendix to the *Kent* opinion. (383 U.S. 541, 566, 16 L. Ed. 2d 84, 100, 86 S. Ct. 1045, 1060.) Again the council commentary notes that, although prior law had not specified such standards, "[c]riteria for transfer suggested by the Kent case are now listed in the section." (Ill. Ann. Stat., ch. 37, par. 702–7, Council Commentary, at 81 (Smith-Hurd Supp. 1979).) We think that the evidence that the legislature expressly followed the Supreme Court's guidelines in drafting the present

transfer statute reinforces the normal presumption of constitutionality that attaches to all statutes. We note that the only court to consider the constitutionality of this statute rejected a claim that the statutory standards were too ambiguous, holding that they were "specific enough to satisfy due process." *United States ex rel. Pedrosa v. Sielaf* (N.D. Ill. 1977), 434 F. Supp. 493, 497.

Turning to defendant's specific arguments, we believe he may not properly claim that he was denied due process because the statute does not require the judge to state his reasons for ordering a transfer; here the judge did state his reasons. The judge found sufficient evidence for a grand jury to return an indictment for the crimes charged, as well as evidence that the crimes were committed in an aggressive, premeditated and violent manner. He further took judicial notice of the juvenile court file showing that defendant had an extensive prior history of delinquency. Finally, he found, based on expert testimony, that there were no juvenile facilities available for dealing adequately with one in defendant's situation and that transfer was in the best interests of defendant and the People. We nonetheless comment on defendant's argument.

The Supreme Court in *Kent* held that the juvenile court must "accompany its waiver order with a statement of the reasons or considerations therefor *** with sufficient specificity to permit meaningful review." (383 U.S. 541, 561, 16 L. Ed. 2d 84, 97, 86 S. Ct. 1045, 1057.) The court indicated, however:

> "We do not read the statute as requiring that this statement must be formal or that it should necessarily include conventional findings of fact." (383 U.S. 541, 561, 16 L. Ed. 2d 84, 97, 86 S. Ct. 1045, 1057.)

According to our interpretation of the Illinois transfer statute, the role of the appellate court is to determine whether, in evaluating the evidence in light of the

statutory criteria, the juvenile judge has abused his discretion. (*People v. Underwood* (1977), 50 Ill. App. 3d 908.) Therefore, while no formal statement of reasons or conventional findings of fact are necessary, the juvenile judge must take care to preserve a record sufficiently explicit so that his exercise of discretion may be reviewed meaningfully. The trial judge in the present case made findings of fact, and the council commentary appears to favor a formal statement of reasons. Neither the statute nor *Kent,* however, precludes more informal means of preserving a record sufficiently adequate to ensure meaningful review. We note that other courts considering this issue have reached the same conclusion. The Supreme Court of Montana has said:

"We do not construe the provisions of the Montana Juvenile Court Act as requiring conventional findings of fact or an express, formal statement of the reasons for ordering the waiver and transfer. If the reasons motivating the exercise of the juvenile court's discretion in ordering the waiver and transfer sufficiently appear in the record of the hearing to permit meaningful appellate review of the discretion exercised, constitutional requirements are satisfied." *Lujan v. District Court* (1973), 161 Mont. 287, 295, 505 P.2d 896, 900-01.

See also *In re Welfare of I.Q.S.* (1976), 309 Minn. 78, 86, 244 N.W.2d 30, 38; *Lewis v. State* (1970), 86 Nev. 889, 894, 478 P.2d 168, 171.

We consider next defendant's contention that the statute denied him due process by failing to articulate a standard of proof, by prescribing for transfer hearings the relaxed rules of evidence used at dispositional hearings, and by failing to specify a formula according to which the judge must weigh the six criteria that the statute lists for his consideration. The statute provides that "[t]he rules of

evidence shall be the same as under Section 5—1 of this Act" (Ill. Rev. Stat. 1975, ch. 37, par. 702—7(3)(a)), and the council commentary refers, albeit with a typographical error, to the same section for the standard of proof. Section 5—1(1) provides:

> "After adjudging the minor a ward of the court, the court shall hear evidence on the question of the proper disposition best serving the interests of the minor and the public. All evidence helpful in determining this question, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing. ***" (Ill. Rev. Stat. 1975, ch. 37, par. 705—1(1).)

Defendant contends that in order to comport with due process requirements the statute must render hearsay inadmissible and provide that the State prove by "clear and convincing evidence" that transfer would be in the best interests of the minor and the public. We do not agree.

The standard for determining what due process requires in any juvenile proceeding is "fundamental fairness." (*McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 543, 29 L. Ed. 2d 647, 659, 91 S. Ct. 1976, 1985.) To determine what specific procedural safeguards fundamental fairness requires in the context of a particular proceeding, one must understand the nature of the proceeding. The salient feature of the transfer hearing challenged here is that it is not adjudicatory in nature. Regardless of the importance of such a hearing to the juvenile, it does not determine guilt or innocence. Rather, as the statute recognizes, the hearing is dispositional in nature, determining the forum in which guilt or innocence is to be adjudicated. As the Supreme Court of Washington has said:

> "In determining whether the essentials of due process and fair treatment were provided in the

instant case, it is important to keep in mind the exact nature of a juvenile court transfer hearing. Such a hearing does not result in a determination of delinquency ***; does not result in a determination of guilt as may a criminal trial; and does not directly result in confinement or other punishment as may both a delinquency hearing and a criminal proceeding. In short, the transfer hearing is not an adversary proceeding. Rather, the sole purpose of the transfer hearing, as we have recently said, is to determine 'whether best interests of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult.' [Citation.] We believe that this purpose may best be effectuated by the sound exercise of the juvenile court judge's discretion at an informal hearing, limited of course by the general requirements of due process and fair treatment, but not governed by the strict rules of procedure and evidence applicable at either a criminal trial or at a juvenile court delinquency hearing." *State v. Piche* (1968), 74 Wash. 2d 9, 14, 442 P.2d 632, 635-36, *cert. denied* (1969), 393 U.S. 1041, 21 L. Ed. 2d 588, 89 S. Ct. 666. See also *Clemons v. State* (1974), 162 Ind. App. 50, 58-60, 317 N.E.2d 859, 864-65; *State v. Carmichael* (1973), 35 Ohio St. 2d 1, 298 N.E.2d 568; *In re Murphy* (1972), 15 Md. App. 434, 291 A.2d 867.

We agree with the Supreme Court of Washington. The transfer hearing not being adjudicatory, the procedural safeguards required at criminal trials and adjudications of delinquency are not mandated by due process. We hold that under our statute the State need only present evidence sufficient to persuade the trial court, in the sound

exercise of its discretion, that in light of the statutorily prescribed criteria transfer is warranted.

As regards the standard of proof, we note that the Uniform Juvenile Court Act suggests only a probable cause standard:

> "[T]he court *** may transfer the offense for prosecution to the appropriate court having jurisdiction of the offense if: *** (4) the court finds that there are reasonable grounds to believe that (i) the child committed the delinquent act alleged; (ii) the child is not amenable to treatment or rehabilitation as a juvenile through available facilities; (iii) the child is not committable to an institution for the mentally retarded or mentally ill; and (iv) the interests of the community require that the child be placed under legal restraint or discipline." (9 Uniform Laws Annotated, Uniform Juvenile Court Act, sec. 34(a)(4), at 429 (master ed. 1973).)

Although evidence of the juvenile's guilt is among the statutory criteria, it is apparent that the greater the evidence of guilt required to be submitted by the State, the greater the likelihood of double jeopardy problems with the subsequent trial. See *Breed v. Jones* (1975), 421 U.S. 519, 541, 44 L. Ed. 2d 346, 362, 95 S. Ct. 1779, 1791.

The admission of social records containing hearsay is inherent in the nature of a dispositional hearing. The Supreme Court of Wisconsin quoted with approval the following characterization of a Federal district court:

> "Unlike a typical criminal action, a juvenile waiver proceeding vests the judge with a wide amount of discretion in making his determination. In his decision making, the juvenile judge does not simply deal with a specific factual incident in the accused's life as does a criminal court judge, but rather the juvenile judge must consider the juvenile's past, his future, his mind, and his acts and then balance these factors against

the safety, needs, and demands of society." (*In re F. R. W.* (1973), 61 Wis. 2d 193, 210, 212 N.W.2d 130, 139, quoting *Miller v. Quatsoe* (E.D. Wis. 1971), 332 F. Supp. 1269, 1275.) The use of documentary or testimonial evidence of a reliable nature, even though hearsay, constitutes a much less time-consuming method of proof very nearly essential to this type of hearing. Its use in that context is not, in our judgment, constitutionally impermissible.

Finally, as regards assignment of weights to the statutory criteria, we note that the appendix to the *Kent* opinion comments as follows on the criteria listed there, on which the Illinois criteria are modeled:

"Although not all such factors will be involved in an individual case, the Judge will consider the relevant factors in a specific case before reaching a conclusion to waive juvenile jurisdiction and transfer the case to the U. S. District Court for the District of Columbia for trial under the adult procedures of that Court." (*Kent v. United States* (1966), 383 U.S. 541, 567-68, 16 L. Ed. 2d 84, 101, 86 S. Ct. 1045, 1060.)

We believe it is not constitutionally required and would not be feasible for the statute to prescribe a mathematical formula to govern the judge's discretion. As the Maryland court of special appeals said of a similar constitutional challenge:

"Of course, not all of the relevant factors under Section 70–16 need be resolved against the juvenile to justify the waiver of jurisdiction. Nor is there any utility in requiring the court to make an arithmetic-type calculation as to the weight given by it to each factor." *Hazell v. State* (1971), 12 Md. App. 144, 155, 277 A.2d 639, 645.

The United States Supreme Court has recognized the constitutionality of the judicial discretion and lack of

formal procedure inherent in the juvenile transfer proceeding. In *Kent* the court observed of the statute that it upheld:

> "The statute gives the Juvenile Court a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached." (383 U.S. 541, 553, 16 L. Ed. 2d 84, 93, 86 S. Ct. 1045, 1053.)

Later in its opinion, after holding that a hearing was required for juvenile transfer, the court explained:

> "We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." (383 U.S. 541, 562, 16 L. Ed. 2d 84, 97-98, 86 S. Ct. 1045, 1057.)

Subsequently, in *Breed v. Jones* (1975), 421 U.S. 519, 537, 44 L. Ed. 2d 346, 360, 95 S. Ct. 1779, 1790, the court noted:

> "However, the Court has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court. We require only that, whatever the relevant criteria, and whatever the evidence demanded, a State determine whether it wants to treat a juvenile within the juvenile-court system before entering upon a proceeding that may result in an adjudication that he has violated a criminal law and in a substantial deprivation of liberty, rather than subject him to the expense, delay, strain, and embarrassment of two such proceedings."

These observations not only indicate that the procedures

urged by defendant are not constitutionally compelled, but also suggest that they are not desirable. The end result of excluding hearsay and placing a burden of clear and convincing evidence on the State would be to make the proceedings more formal and adversarial, thus increasing the expense, delay, strain and embarrassment that are the warning signs of double jeopardy problems. We think the best general answer to defendant's position is the Supreme Court's comment in *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 551, 29 L. Ed. 2d 647, 664, 91 S. Ct. 1976, 1989:

> "If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it."

We consider next defendant's argument that he was denied due process because he was not permitted to appeal the transfer order until after his trial. We see no reason to believe that a right of interlocutory appeal is constitutionally compelled here, and defendant has cited no authority that so holds. We note that the District of Columbia statute upheld in *Kent* had no such provision. (D.C. Code sec. 11–914 (1961), cited in *Kent v. United States* 383 U.S. 541, 547-48 & n.6, 16 L. Ed. 2d 84, 90 & n.6, 86 S. Ct. 1045, 1050 & n.6.) Moreover, when a party is threatened with a loss of important rights, procedural due process ordinarily requires a meaningful opportunity to be heard, but not a right to immediate appeal before the decision is implemented. (See, *e.g., Morrissey v. Brewer* (1972), 408 U.S. 471, 489, 33 L. Ed. 2d 484, 499, 92 S. Ct. 2593, 2609, and *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 782, 36 L. Ed. 2d 656, 661-62, 93 S. Ct. 1756, 1759-60 (loss of liberty); *Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (loss of

good-time credits); *Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (loss of welfare benefits).) Furthermore, as regards the wisdom of allowing such an appeal, we intimated in *People v. Martin* (1977), 67 Ill. 2d 462, that, if called upon to do so, we would reaffirm our holding in *People v. Jiles* (1969), 43 Ill. 2d 145. In *Jiles,* we held that under the predecessor provision of section 2—7 the juvenile had no right to an interlocutory appeal from a transfer order, noting, "To permit interlocutory review would subordinate [the issue of guilt or innocence] and defer its consideration while the question of the punishment appropriate for a suspect whose guilt has not yet been ascertained is being litigated in reviewing courts." (43 Ill. 2d 145, 150.) The evils of delay—failing memories of witnesses, as well as their increasing unavailability—seriously jeopardize the prospect of a just disposition, as this court observed in *Jiles.* 43 Ill. 2d 145, 150.

Defendant nonetheless argues that a more serious consequence of delay exists here in that delaying a determination of the propriety of the transfer order until the appeal from a criminal conviction denies him the benefits of treatment as a juvenile. That argument overstates the fact. Defendant cites no authority holding that his attainment of his 17th birthday precludes subsequent treatment as a juvenile for conduct occurring prior to his becoming 17. Section 1—13 of our Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701—13) defines "minor" as "a person under the age of 21 years ***," and section 2—2 (Ill. Rev. Stat. 1975, ch. 37, par. 702—2) defines a delinquent as "any minor who prior to his 17th birthday has violated or attempted to violate *** any federal or state law or municipal ordinance." Subsequent sections dealing with the initiation and disposition of delinquency proceedings (Ill. Rev. Stat. 1975, ch. 37, pars. 704—1, 705—1 through 705—7) speak of "minors" or "minors

under this Act," and it seems apparent that delay of juvenile proceedings beyond the 17th birthday does not preclude their use for conduct occurring prior to the 17th birthday so long as the juvenile is still under 21. True, some types of disposition available at 16 may not be available at 18 (see, *e.g.,* Ill. Rev. Stat. 1975, ch. 37, par. 705—2), but even the interlocutory appeal sought by defendant might well involve that result. This seems particularly pertinent when one considers that, broadly speaking, our cases tend to demonstrate that, as here, it is the older juveniles who are likely to be transferred and prosecuted criminally.

The appellate court did not reach the question whether the evidence adduced at trial was sufficient to sustain defendant's conviction for armed robbery. We agree with defendant that this was error. When an appellate court reverses a criminal conviction and remands the case for a new trial without deciding defendant's contention that the evidence at the first trial was insufficient, we believe that the court risks subjecting the defendant to double jeopardy. The United States Supreme Court has held:

> "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials." (*Burks v. United States* (1978), 437 U.S. 1, 11, 57 L. Ed. 2d 1, 9, 98 S. Ct. 2141, 2147.)

We do not agree, however, that the evidence here was insufficient to support the armed robbery conviction, as defendant argues. Although the complaining witness testified that she had not checked the zipper part of her purse, where she kept the $2,000, for two or three months, she also testified that she lived alone and never took the purse

out of the house. Our holding in no way implies, of course, as the State suggests, that we have made a finding as to defendant's guilt that would be binding on the court on retrial.

Defendant's final argument is that because he was 16 years old when the crimes for which he was sentenced were committed, he should have been sentenced to the Juvenile Division of the Department of Corrections rather than the Adult Division. Section 5—8—6(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—6(c)) provides:

> "All offenders under 17 years of age sentenced to imprisonment shall be committed to the Juvenile Division of the Department of Corrections ***."

Defendant would have us interpret this as "all persons under 17 years of age *at the time they commit an offense for which they are subsequently* sentenced to imprisonment ***." Although we agree that the statute is not entirely explicit, we find this construction tortured. It is much more natural to interpret the statute as "all offenders under 17 years of age *when* sentenced to imprisonment ***." (See *People v. Walker* (1978), 61 Ill. App. 3d 891, 897.) The policy of the statute appears to be twofold: to protect the offender who is under 17 from the hardening influence and possible abuse from fellow inmates in the adult penitentiary system and to protect those committed to the Juvenile Division from being preyed on by inmates over 17. The offender's age when sentenced is therefore the relevant criterion.

The State argues that the appellate court erred in holding that the trial court should have suppressed defendant's third confession as well as the two prior ones. Our review of the record convinces us that the appellate court correctly held that the State had not sustained its "heavy burden" of proving that defendant knowingly and intelligently waived his previously invoked right to

counsel.

In accordance with the above reasoning, the judgment of the appellate court is affirmed.

*Judgment affirmed.*