(No. 54359.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KEVIN EUGENE WOODRUFF, Appellee.

*Opinion filed December 18, 1981.*

SIMON, J., specially concurring.

Tyrone C. Fahner, Attorney General, of Springfield

and Basil G. Greanias, State's Attorney, of Decatur (Melbourne Noel, Assistant Attorney General, of Chicago, and Jeff Justice, Assistant State's Attorney, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Charles M. Schiedel, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE RYAN delivered the opinion of the court:

On June 25, 1979, a petition was filed in the circuit court of Macon County alleging that the defendant, Kevin Eugene Woodruff, age 15, is a delinquent minor. The petition alleged that the defendant committed the offenses of armed robbery, armed violence, and home invasion. On the same day, the State's Attorney filed a motion to have the defendant tried as an adult. (Ill. Rev. Stat. 1979, ch. 37, par. 702—7(3).) On August 10, 1979, the court entered an order authorizing the State to try the defendant as an adult for violations of the criminal law. The criminal trial began on November 19, 1979, at which time the defendant moved that he be discharged for failure of the State to bring him to trial within 120 days from the date he was taken into custody. (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(a).) The motion was denied and, following a jury trial, the defendant was convicted of armed robbery and home invasion, and sentenced to two concurrent terms of seven years' imprisonment.

In the appellate court, the defendant raised three issues. However, the appellate court only addressed one of these (the failure to bring the defendant to trial within 120 days), and reversed the defendant's convictions on that basis. The appellate court held that under the facts of this case, which will be set out in more detail below, the 120-day period began running when the delinquency petition was filed and summons issued on June 25, 1979. The court held that the

time between that event and the entry of the order authorizing the defendant to be tried as an adult had to be counted in determining whether the defendant had been brought to trial within 120 days from the date he was taken into custody. (90 Ill. App. 3d 236.) We granted the State's petition for leave to appeal.

Prior to the filing of the delinquency petition involved in this case, an earlier delinquency petition had been filed on August 3, 1978, charging that Kevin Woodruff had entered a building without the owner's consent and committed damage to the property therein. At the adjudicatory hearing on the petition, the defendant was placed on supervision for a period of one year beginning September 21, 1978. Thereafter, several reports were filed by the probation officer setting forth various violations of the conditions of the supervision order. As a result of these violations a detention warrant was issued. On April 12, 1979, following a detention hearing, the minor was ordered detained in a detention facility until April 16, at which time he was to be released to his father, and the matter was continued for a hearing. Following the release of the defendant to his father, the probation officer reported that on May 2, 1979, the defendant was seen stealing a minibike and on May 14, 1979, the defendant was arrested by the police on a burglary charge. It does not appear that he was held. In addition to these violations, the defendant's father reported that the defendant was out of control, had been smoking "pot" and using other drugs, and had not come home for two nights. Also, the father reported that the defendant had not been attending school. Finally, on May 14, a detention warrant was issued but was apparently not served. On May 25 the defendant's attorney reported that the whereabouts of the defendant was unknown. The hearings on the alleged violations were continued generally. On June 3, 1979, the defendant was apprehended and detained in the Macon County juvenile detention facility.

On June 5 the court entered a detention order directing that he be detained in the juvenile detention facility. On June 14 the adjudicatory hearing was held and the defendant was found to be a delinquent minor and he was adjudged a ward of the court. On June 23 the dispositional hearing was commenced and was concluded on June 26, at which time the court entered an order committing the defendant to the Department of Corrections, juvenile division, and ordering the sheriff to forthwith deliver the defendant to the Department of Corrections, juvenile division. It was further ordered that the defendant be held in the Macon County juvenile detention facility pending transfer to the Department of Corrections.

The beginning of the proceedings leading to the defendant's conviction in our case overlaps the violations and proceedings set out above, which pertain to the earlier delinquency adjudication of this defendant. On June 25, 1979 (after the defendant had been adjudicated a delinquent in the prior proceeding, but before the dispositional order in that case), the delinquency petition was filed in this case charging that the defendant had committed the offense of armed robbery and home invasion for which he was later prosecuted criminally. A motion to prosecute the defendant as an adult was filed at that time. Summons was issued and served upon the defendant on June 28, 1979 (after he had been committed to the Department of Corrections, juvenile division, by the dispositional order entered in the prior case, but while he was still being held in Macon County juvenile facility pursuant to the court order pending his transfer to the Department of Corrections).

The adjudicatory hearing for this second delinquency petition was set for July 12, 1979; however, the defendant had been transferred to the Department of Corrections, juvenile division, on July 2. On July 23, 1979, a petition for a writ of *habeas corpus ad prosequendum* was filed by the State's Attorney of Macon County, and on that date the

court entered an order allowing the State's request. As noted previously, the defendant's trial on the criminal charges commenced November 19, 1979. At that time defendant moved for a discharge, alleging the violation of his right to a speedy trial, and the trial court denied his motion.

Nothing in the record indicates that the defendant was held in custody in connection with the second delinquency petition until July 26, 1979, at which time he was produced in court in response to the writ of *habeas corpus,* the order for which was entered on July 23, 1979, and the writ itself was dated July 24, 1979. Until July 26 the defendant was in custody and being held as a result of the adjudication of delinquency in the previous case pursuant to the order of June 14, 1979. The Juvenile Court Act severely limits the authority to hold a minor in custody. (See Ill. Rev. Stat. 1979, ch. 37, pars. 703—1, 703—4, 703—5, 703—6.) The record in the second delinquency proceeding contains no findings or orders as required by these sections of the Act as a prerequisite to holding the minor in custody. On the date the second delinquency petition was filed and at all times thereafter until July 26, 1979, the defendant was being held in custody under a detainer order entered in the earlier delinquency case, following an adjudicatory hearing. The record discloses that on July 26, 1979, the defendant was present in court in custody of the sheriff. He had been delivered to the sheriff by the Department of Corrections, juvenile division, in response to the writ of *habeas corpus* issued in the second proceeding.

Section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 103—5) provides:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody * * *."

Under this section the defendant must be held in custody

for the charge for which he is being prosecuted before the 120-day period on that charge begins to run. That period, however, may begin to run at the time of arrest and before the defendant has been formally charged. (*People v. Jones* (1965), 33 Ill. 2d 357, 360; *People v. Sexton* (1972), 6 Ill. App. 3d 779, 781; *People v. Nettles* (1969), 107 Ill. App. 2d 143, 149.) In our case the defendant was not held in custody under any order relating to this offense or the second delinquency petition until July 26, 1979, when he was returned to the circuit court of Macon County pursuant to the writ of *habeas corpus*. Under the Juvenile Court Act, a minor cannot be held in custody except in conformance of the requirements of that Act. Since no order was entered restraining defendant in the second case until July 26, 1979, the 120-day period had not run when the defendant was brought to trial on November 19, 1979.

Furthermore, we are convinced that the 120-day period should not commence in such cases until the court enters an order authorizing the juvenile to be prosecuted as an adult for the offense he allegedly committed. (See Ill. Rev. Stat. 1979, ch. 37, par. 702—7.) In this case that order was entered August 10, 1979. This conclusion is prompted by the distinctly different nature of the two proceedings; those under the Juvenile Court Act, and proceedings under the Criminal Code of 1961 and the Code of Criminal Procedure of 1963.

The reason for this conclusion is found in the very language of section 103—5 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1979, ch. 38, par. 103—5.) It is apparent from the language of this section that it relates to the criminal prosecutions only. Section 103—5 applies only to persons held in custody for *an alleged offense*. An offense is defined in the Criminal Code of 1961 as "a violation of any penal statute of this State." (Ill. Rev. Stat. 1979, ch. 38, par. 2—12.) In a proceeding under the Juvenile Court Act, the minor is not held in custody for an alleged offense. The Juvenile Court Act provides that no minor

shall be denominated a criminal by reason of an adjudication under the Act, nor shall any adjudication be denominated a conviction. (Ill. Rev. Stat. 1979, ch. 37, par. 702—9.) As noted earlier, the Act strictly limits the authority to hold a minor in custody. Under the Act the minor is not held in custody for an alleged offense, but pursuant to an order of the court which may be entered under the limited conditions provided in the Act. For example, prior to the adjudicatory hearing, the court at a detention hearing can only order the minor detained, not as a result of the alleged offense, but only if the court finds that detention is necessary for the protection of the minor or of the person or property of another or that the minor is likely to flee the jurisdiction of the court. (Ill. Rev. Stat. 1979, ch. 37, par. 703—6.) Following an adjudicatory hearing, the court does not find the minor guilty of an offense, but finds him to be a delinquent minor pursuant to the Juvenile Court Act, and not under the provisions of the Criminal Code of 1961 or the Code of Criminal Procedure of 1963. Also, if the court orders the minor detained under the Act, there is no provision that permits him to avoid detention by posting bail.

Other States, in construing the language of their rules and statutes similar to that contained in our section 103—5 of the Code of Criminal Procedure of 1963, have held that their speedy trial requirements do not apply to minors while under the jurisdiction of the juvenile court. In *State v. White* (Iowa 1974), 223 N.W.2d 173, 175, the supreme court of Iowa considered the language in its code which provided:

" 'When a person is held to answer for a public *offense*, if an indictment be not found against him in thirty days, the court must order the prosecution to be dismissed * * *.' " (Emphasis added.)

The court held that an accused is not held to answer for a *public offense* within the meaning of the code unless he is held for a crime.

"Proceedings in juvenile court are not prosecutions for crime. They are special proceedings which serve as an ameliorative alternative to criminal prosecution of children." (*State v. White* (Iowa 1974), 223 N.W.2d 173, 175.)

The court held that a child under the jurisdiction of the juvenile court is not held to answer for a public offense until he is transferred for prosecution as an adult. Both the language of the Iowa code and the language of section 103—5 of our code of criminal procedure use the word "offense."

In *State v. Howell* (1976), 89 N.M. 10, 11, 546 P.2d 858, 859, the New Mexico court construed the "in custody" language of its speedy trial rule as not applying to minors held under the "Childrens Code." In *State ex rel. Williams v. Court of Common Pleas* (1975), 42 Ohio St. 2d 433, 329 N.E.2d 680, the Ohio court held that the language of its speedy trial limitations did not apply to a minor and held that the juvenile comes within the scope of the speedy trial requirements only if and when the juvenile court relinquishes jurisdiction and transfers the case to the appropriate court. To the same effect is *Commonwealth v. Bell* (1976), 245 Pa. Super. 164, 369 A.2d 345; *affirmed per curiam* (1978), 481 Pa. 229, 392 A.2d 691, where the court construed the speedy trial language in Pennsylvania. The court held that a delinquency petition does not constitute the filing of a complaint against the minor and that the time period commences at that time when the case comes within the powers of the criminal court.

Florida has held to the contrary. In *State v. Benton* (Fla. 1976), 337 So. 2d 797, the Florida Supreme Court held that the speedy trial time period commenced when the juvenile was taken into custody as a result of conduct which gave rise to the delinquency petition. The court noted that a Florida appellate court had previously held to the contrary and stated that that holding was correct at the time that it

was rendered. The court in *Benton* based its holding on the adoption of a juvenile speedy trial procedural rule subsequent to the earlier case, which, the court stated, rendered the previous holding obsolete. *State v. Benton* (Fla. 1976), 337 So. 2d 797, 798.

In the above cases, in addition to finding from the language in their respective speedy trial requirements the intent that they apply only to criminal prosecutions and not to juvenile proceedings, the courts also considered that a juvenile proceeding is distinct and different from a criminal prosecution. In *State v. Jacks* (1980), 25 Wash. App. 141, 605 P.2d 363, the Washington court, which had reached the same result, noted that the juvenile court was given exclusive jurisdiction over juvenile offenders. The court stated that it would be inconsistent with the rules governing juvenile proceedings to apply time limitations applicable to criminal prosecutions, noting that the juvenile court rules had their own time limitations to protect a juvenile's interest in a speedy trial. In *State v. Howell,* the New Mexico court pointed out that the "Children's Code" of that State specifically provided that a juvenile, under the code, shall not be deemed a convict and reasoned that it would seem to follow that the time period prior to the transfer of the case out of the juvenile court would not count in computing the period of time within which criminal charges must be tried.

The rationale of these cases applies equally well to Illinois. Clearly, a proceeding under the Juvenile Court Act is distinct and different from a criminal prosecution, and the provisions of that Act apply exclusively to juvenile offenders until such time as the court authorizes criminal prosecution. (Ill. Rev. Stat. 1979, ch. 37, par. 702—7.) The Juvenile Court Act has specific time limitations for the various proceedings thereunder. (Ill. Rev. Stat. 1979, ch. 37, pars. 703—2, 703—4, 703—5(1), 703—5(4), 704—2.) Also, requirements of the Juvenile Court Act concerning service of summons upon or notice to parents of the minor (Ill. Rev.

Stat. 1979, ch. 37, pars. 703—2, 703—5(3), 703—6(3), 704—3, 704—4) are peculiar to proceedings under the Act, are time consuming, and are not consistent with proceedings relevant to a criminal prosecution. The rationale of the Juvenile Court Act is that juvenile offenders are not criminals; proceedings under the Act are not criminal prosecutions; adjudications under the Act are not convictions and a minor so adjudicated does not suffer the consequences of a criminal conviction. (Ill. Rev. Stat. 1979, ch. 37, par. 702—9(1).) We agree with the reasoning of the cases from other jurisdictions cited above that it is not consistent with the purposes and intent of the Juvenile Court Act to apply the provisions of the Code of Criminal Procedure of 1963 to a juvenile offender prior to the time the court authorizes the State to prosecute him as an adult.

It may be that this holding will result in a juvenile offender being incarcerated more than 120 days prior to his trial if he is authorized to be prosecuted as an adult. However, prior to the entry of the order authorizing prosecution, the minor enjoys certain protections and benefits under the Juvenile Court Act that are not extended to one charged with a crime. He is not, for example, required to post bail. Also, the Act, as noted earlier, permits a juvenile offender to be detained only upon specific findings of the court, and strict time limitations are imposed upon the various proceedings under the Act.

This court has recognized the unique nature of juvenile proceedings and the value of retaining a distinction between the juvenile and criminal processes. (*In re Beasley* (1977), 66 Ill. 2d 385, *cert. denied* (1978), 434 U.S. 1016, 54 L. Ed. 2d 761, 98 S. Ct. 734); *People v. Taylor* (1979), 76 Ill. 2d 289, 307.) It is the Juvenile Court Act proceedings that the filing of a delinquency petition commences. The adult criminal process is not imposed upon the juvenile until the outcome of a transfer hearing which authorizes prosecution as an adult. To hold otherwise would be to ignore the

underlying philosophy of the Juvenile Court Act.

Nor does section 1—2(3)(a) of the Act require a different result. That section provides:

> "In all procedures under this Act, the following shall apply:
>> (a) The procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which enhance the protection of such minors." (Ill. Rev. Stat. 1979, ch. 37, par. 701—2(3)(a).)

The provisions of this statute do not require that the 120-day time period commence to run before the order authorizing the minor to be prosecuted as an adult. Prior to that time the minor is protected under the constraints of the Juvenile Court Act which, as stated by the Iowa court in *State v. White* (Iowa 1974), 223 N.W.2d 173, 175, are "not prosecutions for crime. They are special proceedings which serve as an ameliorative alternative to criminal prosecution of children."

Accordingly, the judgment of the appellate court is reversed. The cause is remanded to the appellate court for consideration of the remaining issues.

*Reversed and remanded,
with directions.*

JUSTICE SIMON, specially concurring:

I concur in the decision on the ground that the defendant was in custody for a different offense, not the one out of which this case arose, and for that reason he was not cloaked with the protection of the speedy trial act for more than 120 days before his trial commenced. I disagree with the court's alternative position that minors do not commit "offenses" and can never be "in custody for an offense" until they are transferred to adult status. Common sense says that a person in custody for armed robbery is in custody for an offense, so as to start the speedy trial clock (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(a)).

"Offense" means a violation of any penal statute of this State. (Ill. Rev. Stat. 1979, ch. 38, par. 2—12.) In other words, a person is in custody for an offense if he is in custody for a violation of a penal statute. A delinquent minor is one who has violated or attempted to violate any Federal or State law or municipal ordinance. (Ill. Rev. Stat. 1979, ch. 37, par. 702—2.) While the definitions are not identical, the idea is the same. Essentially, a delinquent minor is one who commits an offense. The focus of both definitions is on the defendant's conduct, not on how the legal system will respond. A minor in custody as delinquent is "in custody *** for an alleged offense" (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(a)).

The Juvenile Court Act declares the policy of this State to be that minors shall have the procedural rights of adults "unless specifically precluded by laws which enhance the protection of such minors." (Ill. Rev. Stat. 1979, ch. 37, par. 701—2(3)(a).) The juvenile speedy trial provision is in fact more stringent than the adult rule: delinquents held in detention are to be tried within 10 judicial days, unless the State shows good cause for a 20-day extension (Ill. Rev. Stat. 1979, ch. 37, par. 704—2). Why, then, should a minor tried as an adult have less protection than a real adult? The court's conclusion contravenes both the letter and the spirit of our statutes.