96 Ill.2d 138 (1983)
449 N.E.2d 129
In re S.R.H., a Minor, Appellee (The People of the State of Illinois, Appellant).
No. 56770.
Supreme Court of Illinois.
Opinion filed April 22, 1983.
*139 *140 Tyrone C. Fahner, Attorney General, of Springfield, and Dennis Schumacher, State's Attorney, of Oregon (Phyllis J. Perko and Martin P. Moltz, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.
G. Joseph Weller and Kathleen J. Hamill, of the Office of the State Appellate Defender, of Elgin, for appellee.
Appellate court reversed; circuit court affirmed.
JUSTICE UNDERWOOD delivered the opinion of the court:
The respondent in these juvenile proceedings was adjudged delinquent and made a ward of the circuit court of Ogle County on April 1, 1981, following a hearing at which the trial judge found respondent guilty of burglary. On appeal, a divided appellate court reversed the trial court's judgment, holding that the failure to specifically allege respondent's lack of authority to enter the private premises involved rendered fatally defective the supplemental petition filed by the State. (106 Ill. App.3d 276.) We granted the State's petition for leave to appeal.
It is unnecessary for us to detail respondent's unfortunate history other than to note that he had been *141 placed on probation on June 24, 1980. Alleging that respondent had violated the conditions of his probation, the assistant State's Attorney filed a petition for revocation of probation on January 14, 1981. On the motion of respondent's probation officer, the trial court required respondent to undergo psychiatric evaluation at the Singer Zone Center, during which respondent escaped and committed the acts with which we are concerned. No further action was taken under the petition for revocation of probation, but a supplemental delinquency petition was filed alleging that "On or about February 28, 1981, in Monroe Center, Ogle County, Illinois, said minor [respondent] did commit the offense of BURGLARY in violation of Sec. 19-1, of Ch. 38 of the Ill. Rev. Stat. of said State, in that said minor knowingly entered a building, a garage of James Marx, located at R.R. 1, Eddy Road, Monroe Center, Illinois, with the intent to commit therein a theft."
At the hearing held thereon, Sherry Oswald, a friend of respondent's, testified that she and respondent had been riding in her car on the morning of March 1, and that respondent had informed her that "he knew somebody's house that we could go to that we could get some stuff because they were at church." She testified that respondent drove to the Marx residence and that she took a tape recorder from the garage while respondent removed some tools, placing them in the trunk of her car. Her testimony also revealed that although they had been driving in Rockford throughout the entire night and early morning of February 28 and March 1, neither she nor respondent used any alcohol or drugs, and respondent's demeanor had been normal when they were at the Marx garage. Although psychiatric testing conducted prior to the hearing indicated that respondent was sane at the time of the theft, respondent's testimony was limited to a statement that his recollection of the incident *142 was vague and that he was unable to remember anything other than the actual removal of the tools.
James Marx testified that he worked with a church youth group and became acquainted with respondent when respondent joined that group approximately nine months prior to the hearing. Mr. Marx further stated that respondent had been a frequent visitor at the Marx residence, but that neither respondent nor any other member of the youth group was given permission to visit the premises when the Marxs were not at home. The testimony of Father Kierney, a priest who was acquainted with respondent, however, indicated that respondent had spent time alone in the Marx residence on at least one occasion.
At the close of the hearing, respondent's attorney urged the trial court to find in favor of the respondent because the supplemental petition, which failed to characterize respondent's entry into the Marx garage as "without authority," did not state a cause of action and the evidence established a reasonable basis for an assumption by respondent that he had authority to enter the premises. These contentions were rejected by the trial court, which found him guilty of burglary and adjudged him delinquent.
The principal issue in this cause concerns the sufficiency of the allegations in the supplementary petition charging respondent with burglary. Under section 2-2 of the Juvenile Court Act, petitions in delinquency proceedings must allege facts establishing that the minor violated or attempted to violate a Federal or State law or municipal ordinance. (Ill. Rev. Stat. 1981, ch. 37, pars. 702-2, 704-1.) In addition, the Act provides minors the same procedural rights as adults "unless specifically precluded by laws which enhance the protection of such minors * * *." (Ill. Rev. Stat. 1981, ch. 37, par. 701-2(3)(a).) Respondent argues that these provisions, when *143 considered together, require delinquency petitions to conform to the requirements of section 111-3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 111-3). That section provides in part:
"Form of Charge.
(a) A charge shall be in writing and allege the commission of an offense by: * * * (3) Setting forth the nature and elements of the offense charged; * * *" (Ill. Rev. Stat. 1981, ch. 38, par. 111-3.)
Pointing to the omission from the petition of the words "without authority" contained in the statutory definition of burglary, respondent contends that the petition was invalid because it failed to contain all of the elements of the offense. Section 19-1 of the Criminal Code of 1961 defines burglary:
"Burglary.
(a) A person commits burglary when without authority he knowingly enters or without authority remains within a building, * * * with the intent to commit therein a felony or theft." (Ill. Rev. Stat. 1981, ch. 38, par. 19-1(a).)
While respondent's argument has some surface logic, its premise is erroneous. It is well established that proceedings instituted under the Juvenile Court Act are not criminal in nature (see, e.g., People v. Woodruff (1981), 88 Ill.2d 10; People v. Taylor (1979), 76 Ill.2d 289; In re Beasley (1977), 66 Ill.2d 385, cert. denied (1978), 434 U.S. 1016, 54 L.Ed.2d 761, 98 S.Ct. 734), and we have consistently recognized that section 1-2(3)(a) does not extend to or guarantee to respondents in juvenile proceedings the rights accorded adult defendants in criminal proceedings. (See People v. Woodruff (1981), 88 Ill.2d 10, 20; In re Beasley (1977), 66 Ill.2d 385, 391.) Our conclusion that the requirements of section 111-3 of the Code of Criminal Procedure of 1963 are not applicable in juvenile proceedings is buttressed by the fact that those provisions appear exclusively in that code (cf. In re Beasley (1977), 66 Ill.2d 385, 390), *144 which governs only criminal prosecutions (Ill. Rev. Stat. 1981, ch. 38, par. 111-1 et seq.). As we said in Woodruff, "this court has recognized the unique nature of juvenile proceedings and the value of retaining a distinction between the juvenile and criminal processes." (88 Ill.2d 10, 19.) Adjudicatory hearings under the Juvenile Court Act are not intended to be adversary proceedings (Ill. Rev. Stat. 1981, ch. 37, par. 701-20) and do not lead to a criminal conviction (Ill. Rev. Stat. 1981, ch. 37, par. 702-9). Consequently, we cannot agree with respondent's contention that the supplemental petition must conform to the requirements of section 111-3.
Although juvenile proceedings are clearly not criminal prosecutions, "certain due process safeguards normally associated with criminal proceedings have been extended for the protection of juveniles to accord to them fundamental fairness." In re Beasley (1977), 66 Ill.2d 385, 390. Even when we have characterized such proceedings as civil in nature (see, e.g., People ex rel. Hanrahan v. Felt (1971), 48 Ill.2d 171; In re Fucini (1970), 44 Ill.2d 305, appeal dismissed (1971), 403 U.S. 925, 29 L.Ed.2d 704, 91 S.Ct. 2242), we have insisted upon adequate notice to the parties and that the proceedings otherwise comport with fundamental due process requirements. (In re Gault (1967), 387 U.S. 1, 18 L.Ed.2d 527, 87 S.Ct. 1428. See McKeiver v. Pennsylvania (1971), 403 U.S. 528, 29 L.Ed.2d 647, 91 S.Ct. 1976; In re Winship (1970), 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068. See also In re Thompson (1980), 79 Ill.2d 262; People v. Taylor (1979), 76 Ill.2d 289; In re Beasley (1977), 66 Ill.2d 385.) Determining due process requirements in a given case, apart from statutory provisions, necessitates an examination of the proceedings in terms of fundamental fairness. In re Thompson (1980), 79 Ill.2d 262; People v. Taylor (1979), 76 Ill.2d 289, 302.
While the violation of law alleged in a delinquency petition need not be stated in conformity with criminal code *145 requirements, fundamental fairness demands a statement of facts leaving no real doubt as to the acts charged. In measuring the sufficiency of that statement, we believe the standard used to determine the sufficiency of a criminal complaint challenged for the first time on appeal may appropriately be employed. Under that test, allegations are sufficient if they "`* * * apprised the accused of the precise offense with sufficient specificity to prepare his defense and allow the pleading of a resulting conviction as a bar to future prosecution arising out of the same conduct.'" People v. Walker (1980), 83 Ill.2d 306, 314; quoting People v. Pujoue (1975), 61 Ill.2d 335, 339. See also People v. Rege (1976), 64 Ill.2d 473; People v. Grant (1974), 57 Ill.2d 264.
Examination of the earlier-quoted charge in the supplemental petition leaves no doubt that it provided respondent with adequate notice of the acts charged and that he was not prejudiced by the omission of the phrase "without authority." Similarly, the allegations are sufficiently specific to preclude, on double jeopardy grounds, any future prosecution based upon the same conduct. We accordingly hold the supplemental petition was valid. Respondent's contention that the State failed to prove that his entry was unauthorized is not persuasive. Weighing the testimony of the witnesses regarding the extent of respondent's authority, if any, was within the province of the fact finder, and it is well established that we will not substitute our judgment for that of the trier of fact to reverse a finding of guilt unless the evidence is sufficiently improbable to raise a reasonable doubt concerning that finding. (See, e.g., People v. Carlson (1980), 79 Ill.2d 564, 583; People v. Vriner (1978), 74 Ill.2d 329, 342; cert. denied (1979), 442 U.S. 929, 61 L.Ed.2d 296, 99 S.Ct. 2858; People v. Manion (1977), 67 Ill.2d 564, 578, cert. denied (1978), 435 U.S. 937, 55 L.Ed.2d 533, 98 S.Ct. 1513.) In light of the owner's uncontroverted testimony that respondent was never given permission *146 to enter his garage, coupled with his statement that respondent was never authorized to enter the Marx home when no one was at home, the evidence supporting the finding of guilt in this cause is not so improbable as to justify a reasonable doubt of respondent's guilt.
For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.
Appellate court reversed, circuit court affirmed.
JUSTICE SIMON, dissenting:
I do not dispute that juvenile delinquency proceedings are different from criminal prosecutions, but I am unable to conclude for that reason, as the majority does, that juveniles are entitled to any less protection in assessing the sufficiency of a charge of criminal behavior against them than an adult in identical circumstances would enjoy. I would affirm the decision of the appellate court.
It is true, as the majority states, that proceedings under the Juvenile Court Act are not generally viewed as being of a criminal nature, and that this has certain implications regarding the safeguards that must be afforded defendants in various situations. Thus, for example, this court has held that the statutory right to a speedy trial (People v. Woodruff (1981), 88 Ill.2d 10), a supreme court rule relating to acceptance of guilty pleas (In re Beasley (1977), 66 Ill.2d 385, cert. denied (1978), 434 U.S. 1016, 54 L.Ed.2d 761, 98 S.Ct. 734), and common law hearsay rules (People v. Taylor (1979), 76 Ill.2d 289) did not apply in juvenile proceedings. As far as I am aware, however, it was never the rule that anything goes simply because the defendant is a juvenile. Indeed, this court has recognized that since orders of supervision (In re R.R. (1982), 92 Ill.2d 423, 429) and probation (e.g., In re Sneed (1978), 72 Ill.2d 326, 331-34) may result in a loss of liberty just as significant as if the defendant had been convicted as a criminal, *147 various provisions in the Juvenile Court Act which enhance the protections accorded to minors for whom these orders are sought should be broadly construed to effect their purpose. Moreover, the court did not refuse to extend the safeguards in Woodruff, Taylor or Beasley to minors without discussing at some length why the safeguard was not essential from the standpoint of due process and was not intended by the legislature to apply to the particular juvenile proceeding at issue. In Taylor, the decision did not depend on the noncriminal nature of juvenile proceedings generally, but the court observed that the hearsay evidence in question possessed facial indicia of reliability and could therefore be admitted in a juvenile transfer hearing, in much the same fashion as hearsay evidence is admitted in sentencing hearings in criminal cases once guilt has been determined. (E.g., People v. La Pointe (1981), 88 Ill.2d 482, 494-99.) In Woodruff and Beasley there was nothing to indicate that the statute or court rule in question was intended to apply to anyone other than a criminal defendant, for whose sole benefit they were promulgated.
The Juvenile Court Act is prefaced by the provision that "[t]he procedural rights assured to the minor shall be the rights of adults unless specifically precluded by laws which enhance the protection of such minors." (Ill. Rev. Stat. 1979, ch. 37, par. 701-2(3)(a).) In section 2-2, the Act defines as delinquent "any minor who prior to his 17th birthday has violated or attempted to violate * * * any federal or state law or municipal ordinance" (Ill. Rev. Stat. 1979, ch. 37, par. 702-2); in another section it requires that the delinquency petition set forth "facts sufficient to bring the minor under Section 2-1 [of the Act]" (emphasis added) (Ill. Rev. Stat. 1979, ch. 37, par. 704-1(2)(a)). Section 2-1 (Ill. Rev. Stat. 1979, ch. 37, par. 702-1) is entitled "Jurisdictional Facts" and refers to the statutory definition of a delinquent minor contained in section 2-2, which is quoted above. That, in my judgment, is a clear indication *148 that the legislature intended to require notice in the charging instrument of all of the essentials of the violation on which the delinquency charge is founded. Although there is no direct statement in the Act that this was meant to include the "nature and elements" of the violation, as is required in the context of a criminal prosecution (emphasis added) (Ill. Rev. Stat. 1979, ch. 38, par. 111-3(a)(3)), neither is there anything in the Act which "specifically preclude[s]" this interpretation, as section 1-2(3)(a) requires, and I find it difficult to understand how one can communicate the essentials of a charge without at least setting forth the essential elements which constitute the violation alleged.
The gist of burglary is not mere entry, regardless of intent; it is unauthorized entry with a felonious intent, or with the intent to commit a theft. Mere entry with felonious intent is not a violation of any law or ordinance that I know of. A charging instrument in a criminal case which charged only this would be facially defective and would have to be dismissed, at least if challenged in the trial court (People v. Lutz (1978), 73 Ill.2d 204; People v. Abrams (1971), 48 Ill.2d 446; see People v. Pujoue (1975), 61 Ill.2d 335). I see no warrant for treating the minor in this case as if he had first raised the sufficiency of the delinquency petition on appeal and applying the lesser "actual prejudice" standard applicable in such cases (People v. Gilmore (1976), 63 Ill.2d 23; People v. Pujoue (1975), 61 Ill.2d 335) when in fact he raised it in the delinquency hearing. As I have mentioned, I find nothing in the Juvenile Court Act which specifically requires such lesser scrutiny, and without such a specific provision this court is not at liberty, under the Act itself (Ill. Rev. Stat. 1979, ch. 37, par. 701-2(3)(a)), to so treat a minor where an adult guilty of identical conduct and whose strategy at trial was the same would receive the full protection of the law as set forth in Lutz and Abrams. Nor am I impressed by appellate *149 court statements from time to time that the element "without authority," when missing from a charge of burglary, can be inferred without prejudice to the defendant because everybody knows lack of authority is an element of burglary. (People ex rel. McLain v. Housewright (1973), 9 Ill. App.3d 803; see People v. Pettus (1980), 84 Ill. App.3d 390, 393-94 (dictum); In re Whittenburg (1973), 16 Ill. App.3d 224 (aggravated-battery charge upheld).) The holding of Lutz and Abrams is that, for purposes of challenges brought in the trial court, prejudice from such omissions is conclusively presumed.
Adjudications of delinquency may not be criminal convictions, but, as illustrated by this case, they often lead to incarceration. In addition, burglary is a serious charge, and a finding of guilt is likely to have severe consequences apart from incarceration for as long as it remains on the juvenile's record. Just as we do not allow adults to be deprived of their liberty without a full recitation in the charging instrument of the elements of the crime alleged, neither should we allow juveniles to face detention in a State facility and a record of delinquency based on a burglary offense without a similar recitation when they are charged with serious antisocial conduct. The Juvenile Court Act says nothing to the contrary, and in fact appears to require this very recitation. I fail to see the justification for permitting the State to omit essential information from delinquency petitions more or less as it pleases when it would take so little effort to include the elements of the violation as the law requires they appear in an indictment or information.