(No. 40342.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
EARNEST LLOYD NICHOLLS, Appellant.

*Opinion filed March 24, 1970.*

THEODORE E. DIEZ, of Alton, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, (JAMES B. ZAGEL, Assistant Attorney General, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Earnest Lloyd Nicholls, defendant herein, was jointly indicted with his son, Charles Nicholls, and his brother-in-law, Paul Kelley, for the crime of murder. He was convicted in a jury trial in the circuit court of Madison County and sentenced to the penitentiary for a term of 100 to 150 years. In a separate trial Charles Nicholls was convicted and sentenced for 75 to 100 years, and his conviction was affirmed in *People* v. *Nicholls*, 42 Ill.2d 91. Paul Kelley pleaded guilty and received a sentence of 50 to 100 years.

Aaron Leggett was killed in the early morning hours of February 4, 1965, in Madison County as a result of several gunshot wounds in the face and chest from a .22 caliber pistol. The State's case rests on the premise that defendant herein requested and paid his 21-year-old son and 19-year-

old brother-in-law the sum of $300 to kill Aaron Leggett because defendant believed Leggett had been paying too much attention to his wife.

Defendant was arrested at his home in the afternoon of February 6 and at that time he voluntarily surrendered his .22 caliber pistol and a partially used box of shells. He was then taken to the sheriff's office where he was questioned for about one hour. That evening he was again questioned in the presence of his wife. He made no admissions on either of these occasions. The next day, Sunday, he was not questioned but his wife was permitted to visit him in jail and he did consult with an attorney. On Monday, February 8, he admitted his participation in the homicide, first to an investigator then to an assistant State's Attorney. That evening he was confronted by his son and brother-in-law, and, faced with their statements as to his involvement, he made certain admissions. Immediately thereafter in a written statement dictated to and typed in narrative form by a police officer he denied any involvement whatsoever.

Defendant now contends that his oral confessions should have been excluded because of failure to arraign him promptly, lack of proper warnings, failure of notice and coercion; that he was not properly warned of his right to counsel and his right to remain silent; that his right of cross-examination was unduly restricted; and that he was not proved guilty beyond a reasonable doubt.

The State offered evidence that defendant purchased a .22 caliber pistol and a box of shells a few days before the killing. The gun itself was introduced into evidence together with ballistics testimony that at least one of the slugs removed from the body of decedent had been fired from it. There was evidence that defendant and his wife had discussed her involvement with decedent and that defendant had been heard saying that he was going to kill decedent. Further proof was offered that defendant had withdrawn $450 from a credit union in two separate

amounts shortly before the killing and on the day after; that he had paid his brother-in-law $140 the day after the murder and his son $150 a day later.

In addition, Dwight Whitlock, an investigator from the Illinois Bureau of Criminal Identification and Investigation testified that on Monday afternoon, February 8, defendant told him that he hired his brother-in-law and son to kill Leggett because he thought Leggett was trying to break up his home; that he gave his brother-in-law the gun the night before the shooting and paid him $140 the next day and later paid his son $150. An assistant State's Attorney stated that that same afternoon defendant told him that he had his brother-in-law and son kill Leggett with his .22 caliber pistol which he had recently purchased; that he gave his brother-in-law the gun the day before and that he paid the boys with money he withdrew from his credit union. A police officer testified that when confronted with his brother-in-law and son later in the evening on February 8 he at first denied their accusations that he had hired them to kill Leggett but finally admitted he had.

Defendant offered several witnesses to testify to his good reputation and his wife to testify that there was nothing serious between her and Leggett though she did admit having been with him on several occasions. In his own behalf, defendant stated that his brother-in-law had been living with him off and on for several years and had given him great trouble, stealing, bringing stolen goods home and getting involved with the police, and that his brother-in-law had argued with him and threatened him. He also stated that his brother-in-law had had some trouble with Leggett and was not on good terms with him. On the afternoon of February 3, he said, his brother-in-law had asked to borrow his gun and that he let him have it though he didn't know what he wanted it for and he did not ask him. On the afternoon of February 4 (the day of the murder) defendant was asleep on the couch in his home when his

brother-in-law came in, shook him awake and said, "I got somebody, he won't bother you and me no more either. It's worth something. Give me $300 or else you will get the same." Defendant said he was scared so he gave him all the money he had, $140; that a little later his brother-in-law came back and demanded to know when he would get the rest and that he should give the rest "to Chuck or else, because I owe it to him." Defendant stated that the next day he gave his son $150 because of the brother-in-law's threat. However, he denied knowing even at this time that Leggett or anyone had been killed.

Defendant seems to argue that since he took no part in the actual shooting the State's only source of proof of guilt on his part would have to be elicited from him, and, therefore, the police and the State's Attorney acted upon a pre-conceived plan to extract from him all the information they could regardless of the illegality of the means. We do not find one iota of truth to this charge. From the very start of the investigation the record reveals exceptional care and respect for the rights of defendant. In their first contact with defendant at his house they identified themselves, advised him of his right to an attorney, obtained from him his oral and written consent to take his .22 caliber pistol and shells, and the written consent was not only read to him but also shown to his wife and she witnessesd it. He then voluntarily removed the gun from under the rug under his bed and gave it to the officers. His contention that he thought the police were merely inquiring about the registration of his gun raises only a question of credibility and we find that the trial court's dismissal of the motion to suppress is fully supported by the evidence. *People* v. *Ledferd,* 38 Ill.2d 607; *People* v. *Harris,* 34 Ill.2d 282.

Next, defendant argues that the delay in arraigning him from Saturday, the day of his arrest, until his confessions on the following Monday constituted a lack of fair play and asks us to re-examine our established position with ref-

erence to *McNabb* v. *United States,* 318 U.S. 332, 87 L. Ed. 2d 819, 63 S. Ct. 608, and *Mallory* v. *United States,* 354 U.S. 449, 1 L. Ed. 2d 1479, 77 S. Ct. 1356. This rule is one of Federal procedure which this court has consistently refused to adopt and we do not choose to do so now. (*People* v. *Kees,* 32 Ill.2d 299.) In any event, the record here does not show any lack of fair play nor such unreasonable or unnecessary delay as to have made defendant's detention illegal within the *McNabb* rule. He had proper food and sleep and was permitted to talk to his wife and his attorney. He was not questioned either exhaustively or continuously. And even if any unlawfulness of detention were assumed, such detention does not of itself invalidate a confession. It is only a circumstance to be considered in determining if a confession is voluntary. *People* v. *Nicholls,* 42 Ill.2d 91.

Defendant contends further that he was never adequately warned of his right to an attorney and his right to remain silent, that failure to do so constituted coercion by psychological pressure and duress which directly affected the voluntariness of his confessions. He argues, as was argued in the trial of his co-defendant in *People* v. *Nicholls,* 42 Ill.2d 91, that as a matter of fairness the commands of *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, should be applied to this case. We reiterate our holding in *People* v. *Nicholls* that fairness does not require the prescription of *Miranda* to be applied retrospectively and that the administration of justice is better served by not applying *Miranda* to trials commenced before June 13, 1966. Even apart from this rule, we have examined the record and find that defendant was adequately warned at all times; that no semblance of coercion or pressure was exercised by the police, and that defendant knowingly and freely volunteered the information he gave. The trial court's finding was not contrary to the manifest weight of the evidence, and his order dismissing the petition to suppress confessions was proper. *People* v. *Nicholls,* 42 Ill.2d 91.

Defendant argues further that the admission into evidence of his affirmative replies to the accusations of his co-defendants constituted error in that he was not furnished with the required notice thereof prior to trial. (Ill. Rev. Stat. 1965, ch. 38, par. 114—10.) It is noted that the two oral confessions made to Whitlock and the assistant State's Attorney were the subject of notice prior to trial and no objection was made to their admission in evidence. It is true that notice was not given of defendant's replies to the accusations of his co-defendants. Though the question may be debatable, we need not determine whether these replies constitute a confession and require notice, for in view of the properly admitted confessions and strong circumstantial evidence of guilt the error, if any, was harmless and not prejudicial. *People* v. *Pelkola,* 19 Ill.2d 156.

Defendant next contends that the trial court erred in refusing to permit him on cross-examination to identify Dwight Whitlock as a polygraph examiner, and that, preceding his confession, defendant had submitted to a polygraph examination. The argument appears to be based on the theory that the jury was entitled to know that this witness was an expert, presumably well versed in extracting confessions, and that with such knowledge they would have been in a better position to assess his credibility. This is a novel argument, but, we believe, wholly without merit. We have consistently held that the results of a polygraphic examination cannot properly be introduced as evidence either of guilt or innocence of an accused. (*People* v. *Nicholls,* 42 Ill.2d 91; *People* v. *Nelson,* 33 Ill.2d 48; *People* v. *Boney,* 28 Ill.2d 505.) If the results of such a test are inadmissible, then it necessarily follows that the mere fact that one was given is likewise inadmissible, for to admit such evidence would only tend to confuse and not enlighten. To say that polygraph examiners are well versed in extracting confessions and therefore their testimony is suspect is a gratuitous assumption. We believe that the jury was sufficiently in-

formed to judge the integrity and credibility of this witness from his appearance and demeanor on the stand, and his expertise from the description of his position as an investigator for the Illinois Bureau of Criminal Identification and Investigation. The trial court properly refused to admit this proposed testimony.

Finally, defendant questions the sufficiency of the evidence. At the trial defendant disavowed his confessions, explained that he purchased the gun for protection from prowlers, denied he had any reason to have Leggett killed, and contended that he paid money to his brother-in-law and son because of the demand and threats of his brother-in-law. Thus, he raises the questions of credibility of witnesses and the weight to be given to their testimony. But it is neither the duty nor the privilege of this court on review to substitute its judgment for that of a jury on such questions and we cannot reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People* v. *Novotny,* 41 Ill.2d 401 ; *People* v. *Mills,* 40 Ill.2d 4.) As indicated above we have carefully reviewed the record and we find that defendant was afforded a fair trial, that his guilt was established beyond a reasonable doubt and that the verdict of the jury was amply justified.

We have been asked to consider a reduction of defendant's sentence. We have stated that our power to do so should be exercised with caution and circumspection. (*People* v. *Taylor,* 33 Ill.2d 417.) Defendant has been proved guilty of the crime of killing a fellow human being, not in the heat of passion, but for little or no reason whatsoever. It is further aggravated by the fact that in the process he has also ruined the lives of his own young son and the young brother of his wife by hiring them to perform the actual killing. We find no justification for a reduction of sentence.

The judgment of the circuit court of Madison County is affirmed.

*Judgment affirmed.*