(No. 61161—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. R.C., a Minor, Appellant.

*Opinion filed October 3, 1985.*

G. Joseph Weller, Deputy Defender, and Robert Hirschhorn, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Mark L. Rotert and Ellen M. Flaum, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE SIMON delivered the opinion of the court:

R.C., a 15-year-old minor, was charged in an amended petition for adjudication of wardship with two counts of residential burglary and prosecuted under the Habitual Juvenile Offender Act (Ill. Rev. Stat. 1983, ch. 37, par. 705—12). Following a jury trial in the circuit court of Lake County at which he was found guilty of residential burglary and also to be a delinquent minor, R.C. was adjudicated an habitual juvenile offender and sentenced to the Department of Corrections until his 21st birthday. With one justice dissenting, the appellate court concluded in a Rule 23 order (87 Ill. 2d R. 23) that R.C.'s right to remain silent was violated by continued questioning after he had invoked that right, but that admission of his statement at trial was harmless error. (128 Ill. App. 3d 1159.) This court allowed the defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)).

R.C. was taken into custody on April 21, 1982, in connection with a burglary of a home in Waukegan. At about 11:30 that morning, R.C. and Lane Ferguson were stopped by a Waukegan police officer, who asked why they were not in school. When asked for identification, Ferguson gave the officer a North Chicago High School

identification card with his name on it, but R.C. said he had no identification, and gave his name as Ricky Moore. The officer then asked to see the contents of the camera case Ferguson was carrying, and found that it contained items of jewelry and a credit card in the name of Thomas Reeves. The officer frisked R.C. and discovered a hunting knife tucked in his pants under his jacket. When the officer told him that he was under arrest for carrying a concealed weapon, R.C. fled.

Later that day, R.C. was taken into custody. At the police station, prior to any questioning, he was advised of his *Miranda* rights from a preprinted form used by the Waukegan police department specifically for juveniles. The interrogating juvenile officer, McLee James, asked after reading each warning aloud whether R.C. understood the right. R.C. said that he did, and James wrote "yes" after each warning on the form. After being advised of his rights, R.C. stated that he did not wish to talk to James, who replied that R.C. had that right, but that he had been identified by Ferguson and the arresting officer. James then asked R.C. about the jewelry taken in the burglary. R.C. asked whether returning the jewelry would make a difference. James replied that it would only affect restitution. R.C. then made a statement admitting his participation in the burglary and directing police to some of the stolen items in his home.

The testimony of James and R.C. at the hearing to suppress R.C.'s statement differs in several respects. While both testified that R.C. said that he did not wish to talk to James after being read his rights, R.C. testified that he also refused to sign a waiver of his *Miranda* rights, that the signature on the waiver form was not his, and that he asked to see a lawyer. James testified that R.C. did not refuse to sign the waiver and that he did not ask to see a lawyer. The circuit court found no

*Miranda* violation and denied the motion to suppress R.C.'s statement.

A statement made by a suspect as a result of a custodial interrogation is admissible if, after being advised of his *Miranda* rights, including the right to remain silent, he voluntarily waives his rights prior to making the statement. (*Miranda v. Arizona* (1966), 384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612.) However, even if a suspect initially waives his rights and agrees to talk to authorities, the interrogation must cease if he indicates "in any manner" prior to or during questioning that he wishes to remain silent. (384 U.S. 436, 444-45, 16 L. Ed. 2d 694, 707, 86 S. Ct. 1602, 1612.) Under these circumstances, the interrogation may be resumed and any statement resulting from renewed questioning is admissible only if the suspect's right to remain silent was "scrupulously honored." *Michigan v. Mosley* (1975), 423 U.S. 96, 103-04, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326.

In determining that the defendant's right to remain silent had been scrupulously honored in *Mosley*, the court noted that he had been fully and carefully advised of that right before his initial interrogation; that he had then signed a waiver form; and that when he stated that he did not wish to discuss the robberies in question, the police officer immediately ceased the interrogation and made no attempt to persuade him to alter his decision. After an interval of several hours, he was questioned by a different police officer at another location about an unrelated crime after being given another full set of *Miranda* warnings. (423 U.S. 96, 104-05, 46 L. Ed. 2d 313, 321-22, 96 S. Ct. 321, 327.) Thus, the factors the court considered in determining that the defendant's invocation of his right to silence had been fully respected were that a significant amount of time had elapsed between interrogations; that the subsequent interrogation

was by a different officer and was prefaced by fresh *Miranda* warnings; and that the interrogation involved a matter unrelated to the subject of the first interrogation.

Under this test, it is clear that R.C.'s right to remain silent was not "scrupulously honored"; in fact, it was not honored at all. Both the interrogating officer and R.C. testified that after he had been read his *Miranda* warnings, R.C. stated that he did not wish to talk to the officer. Rather than terminating the interrogation immediately, which is what *Miranda* requires, the officer told the defendant that he had been identified. This was an obvious effort to persuade R.C. to make a statement. No time elapsed between R.C.'s invocation of his right to silence and the officer's effort to persuade him to confess. Moreover, the same officer immediately questioned R.C. without fresh *Miranda* warnings about the same burglary for which he had been arrested and for which the officer was then in the process of giving R.C. the required *Miranda* warnings.

In a recent opinion, the Supreme Court reiterated the reasons underlying the law regarding custodial interrogation:

> "Not only is custodial interrogation ordinarily conducted by officers who are 'acutely aware of the potentially incriminatory nature of the disclosures sought,' [citation], but also the custodial setting is thought to contain 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' [Citation.] To dissipate 'the overbearing compulsion \*\*\* caused by isolation of a suspect in police custody,' [citation], the Miranda Court required the exclusion of incriminating statements obtained during custodial interrogation unless the suspect fails to claim the Fifth Amendment privilege after being suitably warned of his right to remain silent and of the consequences of his failure to assert it. [Citation.]" *Minnesota v. Murphy* (1984), 465 U.S. 420, 429-30, 79 L. Ed.

2d 409, 421, 104 S. Ct. 1136, 1143-44.

There has been no erosion of this principle since the *Mosley* court declared that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" (*Michigan v. Mosley* (1975), 423 U.S. 96, 104, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326.) There is no support, apart from the concurring opinion in *Mosley*, for the State's contention that when the interrogating officer fails to honor scrupulously the suspect's invocation of his right to silence and then obtains a statement, the appropriate standard for determining the admissibility of that statement is only whether the suspect voluntarily waived his right to silence. Because the defendant's invocation of his right to silence was not "scrupulously honored" in this case, we hold that his statement was inadmissible at trial.

The State maintains that even if the admission of R.C.'s statement was error, it was not reversible error. The standard set out by the Supreme Court in *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828, is that only cases in which the constitutional errors are "harmless beyond a reasonable doubt" can escape reversal. In the present case, apart from the improperly admitted statement of the defendant, the evidence presented at trial consisted almost entirely of Ferguson's testimony, that is, the testimony of an accomplice of questionable credibility who was not prosecuted for his part in the burglary. The only other evidence from which an inference of R.C.'s guilt could be drawn was his flight when told that he was under arrest for carrying a concealed weapon and his possession of a knife taken in the burglary. This is not overwhelming evidence of the defendant's guilt.

Moreover, this court has said that, in determining whether a constitutional error is harmless beyond a reasonable doubt, "[t]he focus should \*\*\* be upon the character and quality of the illegally obtained evidence as it relates to the other evidence bearing on the same issue and the court should appraise the possible impact upon the jury of the wrongfully obtained evidence." (*People v. Black* (1972), 52 Ill. 2d 544, 555, *cert. denied* (1973), 411 U.S. 967, 36 L. Ed. 2d 689, 93 S. Ct. 2155.) In the present case, the illegally obtained evidence was a confession, which corroborated to some extent Ferguson's testimony. Indeed, Ferguson's testimony was credible only to the extent that it was corroborated by R.C.'s statement. The State itself admitted in summation, "[i]f we just had Lane Ferguson's statement, maybe you can dismiss the State's case." Clearly, R.C.'s statement was the foundation of the State's case. Equally clearly, a confession is the most powerful piece of evidence the State can offer, and its effect on a jury is incalculable. We therefore cannot say that the improper admission of R.C.'s statement was harmless beyond a reasonable doubt.

For the reasons stated herein, the judgment of the appellate court is reversed and the cause remanded for a new adjudicatory hearing.

*Reversed and remanded.*