THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VINCENT BROWN, Defendant-Appellant.

First District (5th Division)   No. 85—2501

Opinion filed June 17, 1988.

Steven Clark and Elizabeth Clarke, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Joan Disis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

After a jury trial, defendant Vincent Brown was convicted of murder (Ill. Rev. Stat. 1983, ch. 83, par. 9—1) and sentenced to 30 years' imprisonment. On appeal, defendant contends that: (1) the trial court erred in failing to suppress his oral and written statements; (2) he was denied effective assistance of counsel; (3) he did not knowingly and voluntarily waive his right to remain silent; (4) the evidence was insufficient to convict him; and, alternatively, (5) his sentence is excessive. For the reasons set forth below, we reverse and remand the cause for a new trial.

Defendant, a 16-year-old minor, was arrested for the murder of Reynaldo Reyes. The murder appeared to be gang related. Reyes, a member of the Latin Disciples, was shot at a gas station while he and a companion were using the station's air pump to put air in the tires of a bicycle. Defendant, a member of the Latin Kings, testified at trial that although he was present at the time of the shooting, his initial codefendant in the lower court, Jose Berrios, also a member of the Latin Kings, shot Reyes and that he did not know at any time prior to the shooting that Berrios had a gun and subsequently intended to shoot the victim.

Contrary to defendant's testimony, however, the State introduced a written confession signed by defendant in which he stated that he knew, prior to the shooting, that Berrios had a loaded gun and that Berrios intended to shoot Reyes and his companion. The State also presented three witnesses who variously testified that on the day of the incident they saw defendant with Berrios walking down the street near the gas station, "looking around nervously and chatting to each other"; that defendant had a stick in his hand; defendant and Berrios were subsequently looking into the gas station and talking to each other; that it was unusual for defendant and Berrios to be at the gas station because the area was considered to be the Latin Disciples' territory; that defendant and Berrios walked back and forth in the alley behind the gas station property; that while Berrios remained in the alley, defendant jumped a fence railing onto the gas station property and looked toward the station's air hose, where the victim was standing; that after defendant returned to the alley, he and Berrios went

behind a billboard and Berrios crouched underneath and looked toward the air hose; and that thereafter defendant and Berrios walked behind the fence, "peeking" through the slats of the fence directly behind the air hose. Two of the witnesses further stated that after hearing a shot, they saw Reyes stumble and fall forward towards the air pump, and one of them also saw Berrios and defendant run northbound in the alley immediately afterwards. None of the witnesses saw the actual shooting, nor had they seen defendant or Berrios carrying a gun.

Based on the above facts, the jury found defendant guilty of murder. At defendant's sentencing hearing, the trial judge stated that he believed defendant, and not Berrios, shot the victim and, accordingly, sentenced defendant to 30 years' imprisonment. Defendant's subsequent motion for a new trial was denied, and this appeal followed.

■ Defendant's first argument, that the trial court erred in failing to suppress his court-reported statement, centers around the following colloquy between defendant and the assistant State's Attorney after defendant had separately answered that he understood each *Miranda* right read to him by the assistant State's Attorney:

"Q. All right. Understanding these rights do you wish to talk to us now?

A. *No.*

Q. Pardon me?

A. *I didn't understand.*

Q. Understanding these rights, do you wish to talk to us now?

A. Well, I already told you what happened.

Q. All right. After you told me before about what happened I informed you that I was going to call a court reporter and we were going to take it down in writing, is that correct?

A. Yes, sir.

Q. Now I've advised you of your rights. Understanding these rights do you wish to talk to us now about the incident involved on the 30th of June 1983 involving the shooting death of Renaldo [*sic*] Reyes?

A. Yes." (Emphasis added.)

Defendant contends that after he answered "No" to the State's question of whether he wished to talk with "them," his interrogation should have ceased because he was invoking his fifth amendment right to remain silent. In support thereof, defendant relies on *Michigan v. Mosley* (1975), 423 U.S. 96, 103-04, 46 L. Ed. 2d 313, 321, 96 S. Ct. 321, 326, where the Court stated that once a defendant invokes

his fifth amendment right to remain silent, that right must be "scrupulously honored," based on the following rationale:

> " 'Once warnings have been given, the subsequent procedure is clear. If the individual indicates *in any manner*, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.' " (Emphasis added.) *Mosley*, 423 U.S. at 100-01, 46 L. Ed. 2d at 319, 96 S. Ct. at 325; quoting *Miranda v. Arizona* (1966), 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1627-28.

The State argues that *Mosley* is inapplicable because defendant in fact did not invoke the right to remain silent; defendant's "No" answer was not a clear and unambiguous invocation of the right and, instead, his answer "simply exhibited a misunderstanding as to the wording of the question and was properly clarified in the subsequent series of questions." In arguing that a defendant's invocation of his right to remain silent must be clear, the State relies on a number of cases, *i.e.*, *People v. Krueger* (1980), 82 Ill. 2d 305, 412 N.E.2d 537 (no invocation of right to counsel where the defendant stated "Maybe I ought to have an attorney"), *People v. Cooney* (1985), 136 Ill. App. 3d 989, 484 N.E.2d 802 (the defendant's statement during questioning that he knew nothing more than what was in his written statement was not an invocation of his right to remain silent), *People v. Milner* (1984), 123 Ill. App. 3d 656, 463 N.E.2d 148 (the defendant's statement that he could not answer anything more was found not to be a request to terminate questioning as would render his resulting confession involuntary), *People v. Winston* (1982), 106 Ill. App. 3d 673, 435 N.E.2d 1327 (statement by defendant that he "wasn't sure" he wanted to talk could not be construed as an affirmative request for counsel). The State further contends that defendant clearly waived his *Miranda* rights based on the fact that he was read his rights three different times before his court-reported statement was taken and at no time did he indicate "that he had a problem with understanding" those rights.

We first observe that "even if a suspect initially waives his rights and agrees to talk to authorities, the interrogation must cease

if he indicates 'in any manner' prior to or during questioning that he wishes to remain silent." *(People v. R.C.* (1985), 108 Ill. 2d 349, 353, 483 N.E.2d 1241, citing *Miranda v. Arizona* (1966), 384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1627-28.) Accordingly, the fact that defendant in the present case initially waived his rights three times simply does not affect his right to later invoke those rights. Nor do we find it incomprehensible to believe that a defendant who otherwise states he understands his rights at one point in time subsequently reexamines his understanding of those rights, determines he is unsure of what those rights mean, and, accordingly, invokes his right to remain silent.

We further find the cases relied upon by the State inapplicable to the present situation. Those cases did not involve direct, decisive and unambiguous responses as did defendant's "No" response when asked if he wished to talk to the authorities. The fact that his oral response was not accompanied by a stronger oral statement or physical manifestations does not make his response of "No" any less decisive or clear. In fact, because the questioning continued without any passage of time, defendant was precluded from expanding on his response if he had any intention of doing so.

On the other hand, we find the present matter analogous to the situation in *People v. R.C.* (1985), 108 Ill. 2d 349, 483 N.E.2d 1241, where our supreme court held that the defendant's right to remain silent was violated by continued questioning after he had invoked that right and admission of his statement at trial was reversible error. In *R.C.*, the defendant, a 15-year-old minor, was taken into custody in connection with the burglary of a home. After being advised separately of each *Miranda* right, the interrogator asked the defendant if he understood the right and the defendant replied he did. Immediately thereafter, however, the defendant stated that he did not wish to talk to the interrogator. The interrogator told the defendant he had that right, but that he had been identified by others as a participant in the burglary. The defendant then made a statement admitting to his participation in the burglary. In holding that defendant's right to remain silent had been violated, the court determined that the defendant's right had not been scrupulously honored, based on the fact that after the defendant stated he did not wish to talk to the interrogating officer, rather than terminating the interrogation immediately, the officer told the defendant he had been identified, which was an obvious effort to persuade the defendant to make a statement; no time elapsed between the defendant's invocation of his right to silence and the officer's effort to persuade him to confess; and the same officer

immediately questioning the defendant without fresh *Miranda* warnings about the same burglary for which he had been arrested and for which the officer was then in the process of giving the required *Miranda* warnings.

In the instant appeal, defendant was readvised of his rights prior to the taking of his court-reported statement and he stated he understood each right. However, immediately thereafter he stated that he did not want to talk to the assistant State's Attorney. Interrogation of defendant should have ceased at that point in time in order to scrupulously honor defendant's right to remain silent. Instead, however, like the defendant in *R.C.*, defendant was subjected to continued questioning, without being given fresh *Miranda* warnings, by the same assistant State's Attorney who, for the alleged purpose of "clarification," reminded defendant, a 16-year-old minor, that he had agreed to repeat his previous oral statements to a court reporter. Clearly, the assistant State's Attorney's continued questioning was done to persuade defendant to make a statement.

We further observe that the State's assertion that defendant's response of "No" resulted from a misunderstanding of the preceding question is merely a possible, as well as a convenient, interpretation based upon the State's own "clarification" through a series of subsequent questions which were amenable to the possibility of manipulation of the wording of those questions to obtain the desired "clarification." The fact remains, however, that defendant stated he did not want to talk to the assistant State's Attorney and clearly indicated so based on his responsive "No" to the State's corresponding question. Questioning should have ceased at that point; in order to scrupulously honor defendant's invocation of the right, the State, instead of speculating on what it perceived to be the reason for defendant's answer, should have entertained the idea that defendant was in fact invoking his right to remain silent. Accordingly, because defendant's invocation of his right to remain silent was not scrupulously honored, we hold that his statement was inadmissible at trial.

■ We also find, although the State does not so argue, that admission of defendant's confession was not "harmless beyond a reasonable doubt." (See *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828.) Apart from the improperly admitted statement of defendant, defendant's guilt, at the least, depended upon an accountability theory (see *People v. Torres* (1981), 100 Ill. App. 3d 931, 427 N.E.2d 329), *i.e.*, he knew that Berrios was carrying a loaded gun and that Berrios intended to subsequently shoot the victim. Proof of this theory by the State depended solely on

defendant's written statement, which we have determined to have been illegally obtained. The only other evidence presented was the fact that defendant admitted to being with Berrios when Berrios shot the victim; defendant stated he did not know Berrios had a gun or that Berrios intended to shoot the victim. The State's witnesses variously attested to only seeing defendant and Berrios approach the gas station and "canvass" the area, they never saw a gun being carried by either Berrios or defendant, they only heard a shot and saw the victim fall to the ground, and they saw defendant and Berrios fleeing the scene. In light of the foregoing, defendant's written statement was clearly the foundation of the State's case and, since "a confession is the most powerful piece of evidence the State can offer, and its effect on a jury is incalculable" (*People v. R.C.* (1985), 108 Ill. 2d 349, 356, 483 N.E.2d 1241), we cannot say that the improper admission of defendant's statement was harmless beyond a reasonable doubt.

Having determined that admission of defendant's statement was reversible error, we find it unnecessary to discuss the additional issues raised by defendant in this appeal.

■ Finally, we believe that the evidence at trial was sufficient for the trier of fact to conclude that defendant was guilty beyond a reasonable doubt. This does not mean we are making a finding as to defendant's guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting defendant to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

LORENZ, P.J., and SULLIVAN, J., concur.