No. 2--96--1361

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lee County.

  )

Plaintiff-Appellee, ) No. 95--CF--4

)

v. )

)

DEWAYNE V. HARBACH,  ) Honorable

) Tomas M. Magdich,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Following a trial in the circuit court of Lee County, a jury found defendant, DeWayne V. Harbach, guilty of aggravated criminal sexual abuse (720 ILCS 5/12--16(d) (West 1996)).  Defendant appeals his conviction and contends that the trial court erred when it denied his motion to suppress inculpatory statements that he purportedly made while in custody prior to the trial.  We agree and reverse and remand.

The charge against defendant was based on allegations that, on December 1, 1994, in Lee County, defendant, who was 43 years old at the time, committed an act of sexual penetration with a young woman who was 14 years old at the time.  At the trial, the young woman testified that defendant committed the alleged act.  The State also presented the testimony of Mark Thatcher, a state police investigator.  Thatcher testified that while defendant was in custody in the Lake County jail he made inculpatory statements, including a statement that he had committed an act of sexual penetration with the young woman.

Prior to the trial, defendant filed a motion to suppress the inculpatory statements that he purportedly made to Thatcher.  The trial court conducted a hearing on the motion to suppress.  At the hearing, Thatcher and another police officer, Jerome Costliow, who was present when defendant purportedly made the inculpatory statements, testified for the State.  Defendant and defendant’s father testified for defendant.

The record reveals the following undisputed facts.  On July 14, 1995, shortly after 3 p.m., defendant was arrested in Lake County.  Defendant was subsequently taken to the Lake County jail  where he was booked and placed in a cell known as a holding tank.  At around midnight, defendant telephoned his mother.  Defendant had been advised that he could be bailed out and asked his mother to make arrangements to bail him out.

On July 15, 1995, at around 8 a.m., defendant’s father arrived at the jail to post bail for defendant.  Although he initially went to the wrong place, defendant’s father had posted bail for defendant by around 9 a.m.

On the same date, Officers Thatcher and Costliow arrived at the jail around 10 a.m.  They had traveled from Lee County.  They asked to speak to defendant.  A jailer went to the holding tank where defendant was still being held and asked defendant if he wanted to talk to the officers.  Defendant told the jailer that he did not want to talk to the officers.

Five or ten minutes later, a jailer again came to the holding tank and said something to defendant.  This time, defendant left the holding tank with the jailer and accompanied the jailer to a foyer area in the jail.  In the foyer area, Officers Thatcher and Costliow approached defendant.  After a brief conversation, defendant accompanied the officers to an interview room where he purportedly made the inculpatory statements.  There is conflicting testimony as to what occurred after the police officers approached defendant in the foyer area.

Thatcher's testimony included the following. Even though Thatcher had been informed only 5 or 10 minutes earlier that defendant did not want to talk to police officers, the reason that he approached defendant was to serve defendant with a notice of eavesdropping.  He immediately served defendant with the notice, and defendant then asked the officers questions about the underlying charge.  Before the officers engaged in a conversation with defendant regarding the underlying charge, defendant signed a form that the jailers insisted defendant sign before talking with the officers.  Thatcher had no knowledge of the content of the form; he believed it was just jail policy to have inmates sign such a form before speaking to police officers.  The officers and defendant then moved to an interview room.  Thatcher testified that he then advised defendant of his constitutional rights by reading the 
Miranda
 warnings to defendant from a card that Officer Costliow carried.

Thatcher further testified that defendant stated that he understood his rights but waived them because he wanted to talk to the officers about the charge.  According to Thatcher, only then did the officers discuss the underlying charge with defendant.  Thatcher testified that defendant made the inculpatory statements during the ensuing interview.  Thatcher testified that the officers did not use any promises, threats, deception, or trickery during the interview.  The interview lasted about two hours.

Thatcher acknowledged that the officers did not obtain a written waiver of 
Miranda
 rights from defendant.  Thatcher also acknowledged that defendant made the purported inculpatory statements orally and that the statements were not written or otherwise recorded.

Thatcher testified that while they were interviewing defendant Thatcher and Costliow were not aware that defendant's father was at the jail to post bail for defendant.  According to Thatcher, no one interrupted the interview to tell them that defendant's father was there to post bail for defendant.  Thatcher acknowledged that when he and Costliow were leaving the jail defendant's father approached them and talked to them briefly on his son's behalf.

Costliow's testimony generally corroborated Thatcher's testimony.  However, Costliow testified that he was unaware that defendant had initially declined to talk to the officers.

Defendant testified that no one advised him of his 
Miranda
 rights at any time during his custody following his arrest.  Defendant specifically denied that either Officer Thatcher or Officer Costliow ever advised him of his 
Miranda
 rights.

Defendant's testimony also included the following.  Prior to his arrest on July 14, 1995, he had never been arrested or jailed.  He was kept in the holding tank at the jail the entire night following his arrest.  During the night, numerous loud, drunk men were also placed in the holding tank.  Defendant was unable to sleep at all during the time he was kept in the holding tank.  In the morning, the other men in the holding tank were taken to court.  Defendant was not taken to court because he expected to be bailed out.

Defendant further testified that, after he told the jailer that he did not want to talk to the state police officers, about 5 or 10 minutes later the jailer returned and told defendant that the  officers were still waiting to talk to him.  Defendant testified that, because he was very tired, he did not say anything in response, but instead just followed the jailer to the foyer area.

Defendant testified that the officers approached him in the foyer area and pleaded with him to go with them to an interview room and talk to them.  According to defendant, Thatcher had some papers folded up that Thatcher said were very important and that defendant should see and that if defendant went into a room and talked to the officers they would show defendant the papers.  Defendant testified that the reason he went into the interview room with the officers was that he wanted to see the papers and the officers told him that they would not show him the papers unless he went into the room with them.  According to defendant, when he went into the interview room with the officers, he was not aware that his father was at the jail with the money to bail him out, and no one informed him until after the interview that his father had posted bail for him.  Defendant testified that if he had been advised that his father was there to bail him out he would not have talked to the officers.  Defendant testified that the officers did not show him the papers until the end of the interview.  He recalled that the papers the officers finally showed him had something to do with eavesdropping.

Defendant's father's testimony included the following.  At around 9 a.m., "or a little sooner," on the morning of July 15, 1995, he posted bail for his son at the jail.  He was not allowed to see his son at that time.  Later, while he was sitting and waiting for his son to be released, he saw Officers Thatcher and Costliow enter the jail.  Through glass doors he could see the officers interviewing his son.  The interview lasted for about two hours.  After the interview, as the officers were leaving the jail, defendant's father spoke briefly to Officer Thatcher on behalf of his son.  Defendant was released after the officers left.

The trial court found that defendant was given 
Miranda
 warnings and that defendant was not tricked into talking to the officers.  The trial court then denied defendant's motion to suppress the inculpatory statements that he purportedly made to Thatcher.

On appeal, defendant contends that reversible error occurred when (1) the trial court denied his motion to suppress the  inculpatory statements that he purportedly made to Thatcher; (2) the prosecutor made improper remarks during closing argument; and (3) the State failed to prove him guilty beyond a reasonable doubt.

We first address the trial court's denial of defendant's motion to suppress.  Defendant asserts that the trial court erred because the totality of the circumstances shows that the purported statements were involuntary.  More specifically, defendant argues that the following factors indicate that the statements, if made, were involuntary:  his inexperience with the criminal justice system; his lack of sleep prior to his interrogation; the failure of anyone to advise him of his 
Miranda
 rights; the failure of the officers to scrupulously observe his desire not to talk to them; the use of deception by the officers to get him to talk to them; and the failure of anyone to advise him that his father had made bail for him prior to the interrogation.

The State responds that the trial court did not err in denying defendant's motion to suppress because defendant voluntarily confessed to Officers Thatcher and Costliow.  The State contends that the trial court properly determined that defendant was advised of his 
Miranda
 rights and that no deception was used to induce defendant to talk to Officers Thatcher and Costliow.  As to being advised that his father had posted bail, the State maintains that defendant presented no evidence that the Lake County jail failed to follow its standard practices with respect to defendant's bail and that defendant only speculates that the officers were aware that bail had been posted for defendant when they questioned him.  The State argues that this record shows that defendant waived his 
Miranda
 rights and voluntarily made the inculpatory statements.

It is a fundamental principle of criminal procedure that a confession must be voluntary or else it is inadmissible.  
People v. Melock
, 149 Ill. 2d 423, 447 (1992).  Whether a statement was made voluntarily is judged by the totality of the circumstances.  
People v. Williams
, 181 Ill. 2d 297, 309 (1998).  The test for the voluntariness of a confession is whether the statement was made freely, without compulsion or inducement, with consideration given to the characteristics of the accused and the details of the interrogation.  
People v. Thomas
, 137 Ill. 2d 500, 516 (1990).  No single factor is dispositive; a voluntariness determination is based on the facts of each case.  
Melock
, 149 Ill. 2d at 447-48.

The State has the burden of establishing the voluntariness of a defendant's confession by a preponderance of the evidence.  
People v. Gilliam
, 172 Ill. 2d 484, 501 (1996).  Generally, a reviewing court will reverse a trial court's ruling on a motion to suppress a statement only if the ruling is against the manifest weight of the evidence.  
Williams
, 181 Ill. 2d at 309.  
De
 
novo
 review is appropriate only when neither the facts nor the credibility of the witnesses is questioned.  
Williams
, 181 Ill. 2d at 309.

In this case, the trial court was required to resolve conflicting testimony and to determine the credibility of the witnesses.  Therefore, even though the critical facts are largely undisputed, we will determine whether the trial court's decision was manifestly erroneous.

Based on the totality of the circumstances, we believe that the trial court's denial of defendant's motion to suppress the  inculpatory statements he purportedly made was against the manifest weight of the evidence.  While no single factor is dispositive, a major factor is certainly the failure of anyone to advise defendant that bond had been posted for him and that he was, or would soon be, free to go.  We note that this failure was ongoing through the entire morning.  No one advised defendant of his impending release before the officers attempted to talk to him, and no one advised him after he had invoked his right to remain silent.  Defendant stated that, had he known that he was free to go, he would not have talked to the officers.  We also find that the second police contact, coming hard on the heels of defendant’s refusal to talk and after a sleepless night, exacerbated the situation and is a  factor weighing against the voluntariness of defendant’s statements. 

It is undisputed that defendant's father posted bond for him at least one hour before Officers Thatcher and Costliow first asked to speak to defendant.  It is also undisputed that when the officers first asked to speak to defendant he clearly indicated, even though he had never been advised of his constitutional rights or that bail had been posted for him, that he did not want to speak to the officers.  Nonetheless, after only 5 or 10 minutes, the officers again asked to speak to defendant.  During the ensuing interview, which lasted about two hours, defendant was never advised that bail had been posted for him.  Defendant was not advised that bail had been posted for him until the interview ended, up to three hours after bail had been posted.

A person for whom bail has been set has a right to be released from custody, subject to the conditions of the bail bond, when the appropriate amount of bail has been properly deposited.  725 ILCS 5/110--7(a), (b) (West 1996).  We realize that a reasonable amount of time must be allowed for the authorities to process the bail once it has been posted.  See 
People v. Tripplett
, 12 Ill. App. 3d 834, 836 (1973) (declining to adopt 
per
 
se
 rule rendering inadmissible any statement gained when right to bail is violated, but instead determining if delay was reasonable).  In view of the facts of this case, we find that a delay of more than an hour in at least advising defendant that bail had been posted for him was unreasonable.  We need not determine whether the officers who interviewed defendant were aware that bail had been posted for defendant when they began to talk to him.  After defendant initially refused to talk to the officers, someone should have informed defendant that bail had been posted for him before the officers were again allowed to try to talk to defendant.

Nothing in the record shows that defendant, who had little if any prior experience with criminal procedure, had been advised of his 
Miranda
 rights before the officers asked to speak to him.  Defendant had been in custody overnight for about 18 hours.  During that period, he had been unable to sleep.  When the officers asked to speak to him, defendant clearly stated that he did not want to speak to them.  After only 5 or 10 minutes, the officers again asked to speak to defendant.  Not knowing that bail had been posted for him about an hour earlier, defendant accompanied the jailer and met the officers.  We believe that if defendant had been advised, as he should have been, that bail had been posted for him he would not have gone with the jailer and would not have met with and talked to the officers.  Based on these facts, defendant's purported subsequent inculpatory statements were involuntary and therefore were inadmissible notwithstanding the trial court's findings that the officers advised defendant of his 
Miranda
 rights and did not resort to deception while speaking to defendant.

We are further troubled by the officers’ insistence on speaking with defendant in the face of his clear and unequivocal invocation of his right to remain silent.  In our view, this was a clear violation of defendant's right to remain silent.  See 
Michigan v. Mosley
, 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975); 
People v. R.C.
, 108 Ill. 2d 349 (1985) (law enforcement authorities must scrupulously honor an accused's right to remain silent).  Here, under the guise of serving defendant with a notice of eavesdropping (see  725 ILCS 5/108A--8(a) (West 1996) (requiring service of notice of eavesdropping order)), the officers reinitiated contact with defendant mere moments after defendant refused to speak to them.  This blatant ploy was designed solely to offer the officers one more chance to overbear defendant’s resolve and wring a statement out of him before he escaped the coercive environment of the jail house.  In light of the extremely short period of time that elapsed between defendant’s initial refusal and the officers’ next contact, we fail to see how defendant’s right to remain silent was “scrupulously honored.”  
R.C.
, 108 Ill. 2d at 353 (one of the factors to determine whether the authorities have scrupulously honored an accused's right to remain silent is the amount of time that elapsed between interrogations).  Based on the totality of the circumstances surrounding the giving of defendant’s statements, we conclude that the statements were involuntarily given.

The State does not argue that any error in admitting the statements would be harmless.  Consequently, we need not address that issue.  We conclude that the denial of defendant's motion to suppress the statements in question was reversible error.

Because the trial court's error in admitting the statements was reversible, it is not necessary for us to address defendant's remaining contentions of error.  However, we note that the evidence adduced at trial was sufficient for the jury to conclude that defendant was guilty beyond a reasonable doubt.  We are not making a determination of defendant's guilt or innocence that is binding on retrial.  See 
People v. Rodriguez
, 289 Ill. App. 3d 223, 240 (1997).  Rather, our examination of the sufficiency of the evidence eliminates any risk that defendant would be subject to double jeopardy on retrial.  See 
People v. Taylor
, 76 Ill. 2d 289, 309-10 (1979).

The judgment of the circuit court of Lee County is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GEIGER, P.J., concurs.

JUSTICE DOYLE, dissenting:

I respectfully disagree that the trial court's decision to deny defendant's motion to suppress statements was manifestly erroneous.  Implicit in the majority's analysis is the assumption that the trial court erred in its assessment of the credibility of the witnesses.

If we accept the officers' version as factual, as the court did, a sound basis for denial of the motion becomes evident.  According to the officers, they went to the jail to meet with defendant, unaware that his bond had already been posted.  When defendant declined to come out of his cell, they again asked for defendant to appear, not to question him but rather to serve him with a legal notice.  Although defendant characterizes this legal notice as "an irrelevant court paper," the eavesdropping statute requires that the issuing judge shall cause the notice of request for use of an eavesdropping device to be served upon persons named in the application not later than 90 days after the termination of the period of the order.  725 ILCS 5/108A-8 (West 1994).  Here, the period of the order expired on December 24, 1994, and defendant was not apprehended until July 14, 1995.  In effectuating the court's notice, as statutorily mandated, the officers had both a right and duty to serve the notice on defendant.  In my view, it is speculation to assume that their doing so was a ploy.  

When defendant appeared, the officers did not begin to question him about the crime.  Instead, defendant began asking the officers questions about the charges.  Before any questioning, defendant signed the authorization form provided by the jailers and was given 
Miranda
 warnings.  Defendant said that he understood his rights but waived them because he wanted to talk to the officers about the charges.   

I fail to see how this sequence of events, which is the version found credible by the trial court, can be viewed as an improper "reinitiation" of questioning in violation of the rule of 
Michigan v. Mosley
 (423 U.S. 96, 46 L. Ed. 2d 313, 96 S.C. 321 (1975)).  According to the officers, the discussion of the crime was voluntarily initiated by defendant.

The circumstance that defendant was interviewed in the jail after his father had already posted his bond admittedly presents a closer question in resolving the suppression issue.  I agree with our majority that even if the questioning officers were not aware that defendant's father had arrived with bond money, the jailers should have informed defendant of that fact.  On these facts, it is not unreasonable to conclude that defendant was questioned during a period of unlawful detention.  However, unlawful detention does not of itself invalidate a confession.  It is only one circumstance to be evaluated in the totality of the circumstances in determining voluntariness.  
People v. House
, 141 Ill. 2d 323, 378 (1990); 
People v. Nicholls
, 44 Ill. 2d 533, 538 (1970).  Statements that are otherwise voluntary may, in some instances, still be admissible.  The focal issue remains whether defendant's will was overborne.

Every delay in admitting a defendant to bail will not constitute a violation of the defendant's constitutional right to bail, even where questioning has occurred during the period of the delay.  
People v. Tripplett
, 12 Ill. App. 3d 834, 835-36 (1973).  Defendant cites no authority holding that even a violation of this constitutional right would render 
per se
 inadmissible his otherwise voluntary statements, and this court has not adopted such an exclusionary rule.  See 
Tripplett
, 12 Ill. App. 3d at 836.

Adopting the officers' version, as the trial court did, there is no significant indication of involuntariness here.  Defendant was cooperative and willing to have a conversation with the officers.  I note that defendant admits he knew that his father was going to post bond, which would appear to be consistent with the voluntariness of his participation as opposed to any misapprehension that his custodial situation was hopeless.

Within the parameters of 
Brown v. Illinois
, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975), confessions given during periods of unlawful detention have sometimes been upheld even where interrogation was preceded by the possible trauma of an illegal arrest.  Here, any coercive effect of the detention presumably would be less significant where defendant was not subjected to an illegal seizure but was already in lawful custody and was aware that he would soon be released on bond.

In view of the conflicting testimony, I see no basis for overruling the trial court's determination of the facts, and it is my opinion that those facts support the denial of defendant's motion to suppress statements.  I would affirm the trial court's order.