NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 221070-U

NO. 4-22-1070

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 29, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| CHRISTOPHER A. WHEATON, | ) | No. 21CF129 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Terence M. Patton, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court remanded the cause for a preliminary inquiry into defendant's unaddressed *pro se* posttrial claims of ineffective assistance of counsel.

¶ 2   The trial court found defendant guilty of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)) and criminal sexual assault (720 ILCS 5/11-1.20(a)(3) (West 2020)). The court sentenced defendant to 25 years in prison. Defendant appeals, arguing that (1) the court erroneously granted the State's motion to extend the speedy-trial deadline, (2) the State failed to prove the offenses beyond a reasonable doubt, (3) the court did not address defendant's claim that his counsel failed to submit exculpatory evidence, and (4) the court considered improper sentencing factors, and the sentence was otherwise excessive. Pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, we remand for a preliminary inquiry

into defendant's unaddressed *pro se* posttrial claims of ineffective assistance of counsel. Accordingly, we decline to address defendant's other arguments.

¶ 3                                    I. BACKGROUND

¶ 4        We provide only the facts necessary to understand the dipositive *Krankel* issue.

¶ 5        The State charged defendant by information with the offenses mentioned above, both of which allegedly occurred on or about January 23, 2020. The alleged victims were defendant's daughters.

¶ 6        Over defendant's objection, the trial court granted an extension of the speedy-trial deadline to allow the State to procure DNA testing. See 725 ILCS 5/103-5(c) (West 2022) (authorizing a court to extend the speedy-trial deadline for up to 120 days to facilitate DNA testing). The matter proceeded to a bench trial within the extension granted by the court. Defendant's daughters testified that defendant sexually assaulted them after they returned home from school on multiple occasions. Defendant testified on his own behalf and denied those allegations. Defendant also testified that on January 23, 2020, his father was at the family home from about 3 p.m. until 8 p.m. The court found defendant guilty of both charges.

¶ 7        The presentence investigation report (PSI) contained information that defendant was dissatisfied with his attorney. Specifically, defendant told the interviewer that "his attorney 'did nothing' at trial." Defendant "denied any wrongdoing and felt his attorney failed to call witnesses and provide evidence on his behalf."

¶ 8        At the sentencing hearing, defendant provided an oral statement. He maintained his innocence and said he was physically incapable of committing the offenses for which he was convicted. Defendant also said that one of his daughters made multiple reports that the Illinois Department of Children and Family Services (DCFS) determined were unfounded. Defendant

added, "DCFS found this one unfounded." Defendant said he "wish[ed] those papers had been brought into evidence." Defendant further suggested there was additional evidence that could have shown his innocence:

> "And if it was redone and those papers brought in and witnesses called for me, my friends were there, my friends were there at that house every day 3:30 to 4:00 o'clock, every single day, for several years. My dad was there the day this supposedly happened. That 23rd, we were working on my car. My friend Aaron showed up that night, we worked on a model together. None of this could have happened. And that's all I've got to say."

¶ 9 Defendant's sentencing range for predatory criminal sexual assault of a child was 6 to 60 years in prison. 720 ILCS 5/11-1.40(b)(1) (West 2022). The range for criminal sexual assault was 4 to 15 years in prison. 720 ILCS 5/11-1.20(b)(1) (West 2022); 730 ILCS 5/5-4.5-30(a) (West 2022). The sentences were mandatorily consecutive. 730 ILCS 5/5-8-4(d)(2) (West 2022).

¶ 10 In its sentencing ruling, the trial court mentioned that it considered the "information contained in the [PSI]." The court addressed defendant's grievance against his counsel relating to the DCFS reports. The court explained that such reports are inadmissible in criminal cases, which is why defense counsel "didn't admit them into evidence." The court added that defense counsel "knows what the law is, and those can't be admitted." The court never questioned defendant about any other grievances against his counsel, and the court did not make any findings with respect to those grievances. The court sentenced defendant to 15 years in prison for predatory criminal sexual assault of a child and 10 years for criminal sexual assault.

¶ 11 The trial court denied defendant's motion to reconsider the sentence, and defendant filed a timely notice of appeal.

¶ 12                                        II. ANALYSIS

¶ 13        Defendant raises four issues on appeal, one of which is that the trial court did not address his claim that defense counsel failed to submit exculpatory evidence. For the following reasons, we remand the cause for a preliminary *Krankel* inquiry into defendant's unaddressed *pro se* posttrial claims of ineffective assistance of counsel. We decline to address the other issues defendant raises.

¶ 14        Beginning with our supreme court's decision in *Krankel*, 102 Ill. 2d 181, courts developed a procedure to address *pro se* posttrial claims of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 95. Specifically, a court first must "examine the factual basis of the defendant's claim." *People v. Roddis*, 2020 IL 124352, ¶ 35. "If the court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Roddis*, 2020 IL 124352, ¶ 35. In considering whether a claim lacks merit, a court may consider both the factual and legal bases for the claim. *Roddis*, 2020 IL 124352, ¶¶ 31, 61. "[I]f the allegations show possible neglect of the case, new counsel should be appointed." *Roddis*, 2020 IL 124352, ¶ 35. This process of screening a *pro se* claim is often referred to as a "preliminary *Krankel* inquiry." *People v. Jolly*, 2014 IL 117142, ¶ 30.

¶ 15        In conducting this inquiry, " 'some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim.' " *People v. Ayres*, 2017 IL 120071, ¶ 12 (quoting *Jolly*, 2014 IL 117142, ¶ 30). Thus, the court may "inquire of trial counsel about the defendant's allegations" and "discuss the allegations with defendant." *Ayres*, 2017 IL 120071, ¶ 12. The court may also "make its

- 4 -

determination based on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations." *Ayres*, 2017 IL 120071, ¶ 12.

¶ 16    To trigger the duty to conduct a preliminary *Krankel* inquiry, "a *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention." *People v. Moore*, 207 Ill. 2d 68, 79 (2003). It must be "clear" that the defendant is claiming ineffective assistance of counsel. *Ayres*, 2017 IL 120071, ¶ 18. However, such claim does not need to be detailed. See *People v. Bell*, 2018 IL App (4th) 151016, ¶ 36 (holding that a bare-bones *pro se* motion alleging ineffective assistance triggered the duty to conduct a preliminary *Krankel* inquiry). Although a defendant need not use the specific phrase "ineffective assistance of counsel" (*People v. Clifton*, 2019 IL App (1st) 151967, ¶ 90; *People v. Lobdell*, 2017 IL App (3d) 150074, ¶ 37), "the defendant must at least mention his attorney" in a communication to the court (*People v. Thomas*, 2017 IL App (4th) 150815, ¶ 31); see *People v. Taylor*, 237 Ill. 2d 68, 77 (2010) (determining that a defendant's "rambling" statement did not require a preliminary *Krankel* inquiry where the statement was "amenable to more than one interpretation" and did not even mention the defendant's attorney).

¶ 17    There is no fixed procedure for a defendant to present his or her ineffective assistance claim to the trial court. For example, the duty to conduct a preliminary *Krankel* inquiry may arise from something a defendant writes in a letter or says in open court. *Ayres*, 2017 IL 120071, ¶ 11. Statements attributed to a defendant in a PSI likewise may trigger *Krankel* if the record indicates that the trial court read the PSI. *People v. Craig*, 2020 IL App (2d) 170679, ¶ 18; *In re Johnathan T.*, 2022 IL 127222, ¶¶ 50-51 (embracing *Craig*'s holding and applying it to statements made in materials prepared for a dispositional hearing in a juvenile delinquency case).

¶ 18    Our standard of review "depends on whether the trial court did or did not determine the merits of the defendant's *pro se* posttrial claims of ineffective assistance of counsel." *Jackson*, 2020 IL 124112, ¶ 98. To that end, we review *de novo* the issue of whether a defendant's allegations triggered a duty to conduct a preliminary *Krankel* inquiry. *Bell*, 2018 IL App (4th) 151016, ¶ 36. Likewise, "[w]hether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review *de novo*." *Jackson*, 2020 IL 124112, ¶ 98. "However, if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous." *Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Jackson*, 2020 IL 124112, ¶ 98.

¶ 19    Here, the PSI contained defendant's statements that "his attorney 'did nothing' at trial" and "failed to call witnesses and provide evidence on his behalf." These statements were neither ambiguous nor amenable to multiple interpretations. Defendant clearly was complaining about his counsel's performance at trial. The trial court stated that it considered the PSI, so the record confirms the court would have seen these statements.

¶ 20    At the sentencing hearing, defendant said he wished certain DCFS reports had been introduced as evidence, and he mentioned other witnesses who could have been called. The trial court interpreted defendant's remarks as criticizing his counsel's performance, as the court explained to defendant that the reason counsel did not seek to admit the DCFS reports was that they were inadmissible. Under these circumstances, we conclude that defendant's comments in the PSI and at the sentencing hearing triggered a duty for the court to conduct a preliminary *Krankel* inquiry regarding defendant's ineffective assistance claims.

¶ 21     The parties dispute the propriety of the trial court's determination that the DCFS reports defendant referenced are inadmissible. We hold that the court's conclusion was not manifestly erroneous. The court had enough information from defendant's statement to understand the factual basis for this particular claim and to determine that it lacked merit. See *Moore*, 207 Ill. 2d at 79 (recognizing that a trial court may base its evaluation of a *pro se* ineffective assistance claim on "the insufficiency of the defendant's allegations on their face"). The court properly recognized that unfounded DCFS reports are inadmissible in criminal proceedings. 325 ILCS 5/7.14 (West 2022). Notwithstanding this statute, defendant proposes that a further preliminary *Krankel* inquiry was necessary to investigate the possibilities that either (1) the DCFS reports contained admissible exculpatory evidence or (2) defense counsel failed to use the reports to pursue other admissible evidence. However, defendant only criticized his counsel for failing to seek to admit into evidence the actual DCFS reports, and the court properly addressed that claim.

¶ 22     Although the trial court sufficiently addressed defendant's claim about the admissibility of the DCFS reports, the court failed to conduct a preliminary inquiry regarding defendant's allegations that his counsel " 'did nothing' " at trial and did not call witnesses or provide evidence on defendant's behalf. Unlike defendant's claim about the DCFS reports, these other claims were not inherently baseless on their face, and the court made no findings with respect to them. The court should have elicited further information from defendant on these claims, asked defense counsel to respond to the allegations, and then determined whether it was necessary to appoint new counsel. The State cites *Jackson* for the proposition that allegations relating to trial strategy, such as whether to present witnesses, "cannot serve as the basis of a *Krankel* claim." *Jackson*, 2020 IL 124112, ¶ 106. In *Jackson*, the trial court conducted a proper preliminary *Krankel* inquiry by (1) eliciting information about the factual bases of the defendant's particular grievances,

(2) allowing defense counsel to explain his actions, and (3) determining that the defendant's claims lacked merit. *Jackson*, 2020 IL 124112, ¶¶ 102-03, 106. *Jackson* does not support the proposition that a trial court may simply ignore *pro se* claims of ineffective assistance relating to the failure to call witnesses.

¶ 23 Accordingly, we remand for the trial court to conduct a preliminary *Krankel* inquiry into defendant's unaddressed *pro se* posttrial claims of ineffective assistance of counsel. We decline to address the other issues defendant raises in this appeal. See *Bell*, 2018 IL App (4th) 151016, ¶¶ 24, 37 (declining to address the defendant's remaining arguments, including a challenge to the sufficiency of the evidence, where the cause first had to be remanded for the trial court to conduct a preliminary *Krankel* inquiry). However, we retain jurisdiction over defendant's remaining claims. Accordingly, if defendant is dissatisfied with the outcome of the proceedings on remand, he may appeal again and raise the claims we did not address in this appeal, along with any claims that arise from the proceedings on remand. See *People v. Wilson*, 2019 IL App (4th) 180214, ¶ 26.

¶ 24 In his reply brief, defendant agrees that remanding for a preliminary *Krankel* inquiry obviates the need to address his arguments regarding sentencing. However, notwithstanding the need for a remand, defendant asks us to address both his challenge to the sufficiency of the evidence and his contention that there was a speedy-trial violation, as he would be entitled to outright reversal of the judgment if he prevailed on either of those issues. To that end, defendant maintains that *Bell* was incorrectly decided and contradicts *People v. Lopez*, 229 Ill. 2d 322 (2008), and *People v. Taylor*, 76 Ill. 2d 289 (1979).

¶ 25 Other recently published cases have declined to address substantive issues on direct appeal until the trial court completes posttrial proceedings by conducting a proper preliminary

*Krankel* inquiry. See *People v. Roberson*, 2021 IL App (3d) 190212, ¶ 22; *People v. Lawson*, 2019 IL App (4th) 180452, ¶ 57; *Wilson*, 2019 IL App (4th) 180214, ¶ 25; *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 21. Additionally, we discern no conflict between *Bell* and either *Lopez* or *Taylor*. In both *Lopez* and *Taylor*, the reviewing courts reversed convictions based on trial errors. *Lopez*, 229 Ill. 2d at 366; *Taylor*, 76 Ill. 2d at 295, 310-11. To avoid the possibility of double jeopardy violations, those courts reviewed the sufficiency of the evidence to ensure that retrials would be permissible. *Lopez*, 229 Ill. 2d at 366-67; *Taylor*, 76 Ill. 2d at 309. Here, we have not reversed the judgment or ordered a new trial, so *Lopez* and *Taylor* are inapplicable.

¶ 26        Among the goals of *Krankel* are to "potentially limit issues on appeal" and to create a record for direct appeal. *Ayres*, 2017 IL 120071, ¶ 13. Until the trial court completes posttrial proceedings, it is "premature" for us to address substantive issues in the case. *Roberson*, 2021 IL App (3d) 190212, ¶ 22. We are unpersuaded that an exception should apply where a defendant raises issues potentially implicating outright reversal of the judgment rather than a retrial. We note that the defendant in *Krankel* challenged the sufficiency of the evidence—an issue that could have resulted in outright reversal of the judgment—yet our supreme court remanded the matter to the trial court for further posttrial proceedings without addressing the sufficiency of the evidence. *Krankel*, 102 Ill. 2d at 183, 189. We are aware of no requirement for the appellate court to address a defendant's claims piecemeal over the course of multiple direct appeals.

¶ 27                              III. CONCLUSION

¶ 28        For the reasons stated, we remand the cause for a preliminary *Krankel* inquiry into defendant's unaddressed *pro se* posttrial claims of ineffective assistance of counsel.

¶ 29        Remanded with directions.