2025 IL App (3d) 250304

Opinion filed September 19, 2025

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0304 Circuit No. 25-CF-729 |
| | ) | |
| NASHAUN L. MAXWELL, | ) ) | Honorable Amy M. Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HETTEL delivered the judgment of the court, with opinion.
Justices Peterson and Anderson concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Nashaun L. Maxwell, appeals the Will County circuit court's granting of the State's petition to deny pretrial release, arguing (1) the petition was untimely, as it was filed months after his first appearance before a judge, and (2) the State failed to prove by clear and convincing evidence that no conditions could mitigate any threat he posed. We affirm.

¶ 2                                I. BACKGROUND

¶ 3     On June 17, 2024, the State charged defendant as a juvenile with attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2024)), mob action (*id.* § 25-1(a)(1)), and two counts of aggravated battery (*id.* § 12-3.05(a)(1), (c)). Thereafter, the court granted the State's

request for a discretionary transfer to prosecute in criminal court. See 705 ILCS 405/5-805(3)(a) (West 2024). On April 22, 2025, defendant's case was removed from juvenile prosecution. On April 23, 2025, the State charged defendant as an adult under criminal law with the same offenses, and a grand jury returned a bill of indictment on April 29, 2025. The State then filed a verified petition to deny defendant pretrial release, alleging defendant was charged with a detainable offense and his release posed a real and present threat to the safety of any person, persons, or the community pursuant to section 110-6.1(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(1.5), (7) (West 2024)).

¶ 4     The factual basis provided a physical altercation occurred at the River Valley Juvenile Justice Center. On March 24, 2024, at approximately 8:03 p.m., the victim, D.B., was in a classroom used for recreation or free time. D.B. was admitted into the facility the previous day. D.B. sat alone in a desk, and other detainees were in the room. After D.B. had been in the room for 20 minutes, defendant and his codefendant, Donovan Burbridge, stood in unison from the table where they were playing cards. They approached D.B. from behind and repeatedly punched him. D.B. fell to the ground in a fetal position and may have been unconscious, as he did not move or defend himself. Defendant and Burbridge stomped on D.B.'s head and kicked him repeatedly as he was motionless on the ground. A staff member ordered defendant and Burbridge into lockdown, but they did not comply. The staff member radioed for help, and other staff removed defendant and Burbridge from the room. Burbridge laughed as he was being removed. A video recording demonstrated the attack lasted approximately 15 to 20 seconds. D.B. was unresponsive following the attack and taken to the hospital. As a result of the attack, D.B. suffered a traumatic brain injury and is nonverbal. He has been placed on a ventilator, uses a

2

feeding tube, and is not expected to survive. D.B. had surgery for his head injury, and his hands are contracted.

¶ 5 Prior to the attack, a fellow detainee heard defendant and Burbridge talking between their cells about attacking D.B. After the attack, staff discovered that defendant and Burbridge had already packed their personal belongings, which was not allowed and unusual. This led the staff to believe that the attack was preplanned, as detainees are moved if they are involved in an altercation. Defendant and Burbridge had carried out a similar attack against a different detainee, who went by the name Peanut, a month prior. Peanut indicated defendant and Burbridge asked him about his gang affiliation because he was recently placed in the facility. Peanut believed Burbridge realized Peanut's affiliates had shot Burbridge's brother. Burbridge was associated with "The MOS" gang, defendant was associated with the "Too Wicked" gang, and Peanut was associated with the "Ova East" gang. Shortly after Peanut was attacked, Peanut's family saw a post on a Facebook page belonging to Burbridge (someone else was posting to the page while Burbridge was detained), which stated "We just stomped peanut ta sleep last night omdh that luh shii y'all did at the high school we nothing *** [laughing/crying emojis] *** #FreeLilMoe #freebabywick GO CHECK ON YALL HOMIE." Peanut's father indicated that Peanut had been involved in an altercation the year prior at a Kankakee High School football game. Defendant's history included an adjudication for aggravated unlawful use of a weapon (AUUW) where he served a sentence of 10 months in the Illinois Department of Juvenile Justice and an arrest for mob action stemming from an August 2023 offense in Kankakee County.

¶ 6 On May 8, 2025, defendant filed a motion to strike the State's petition to deny pretrial release, arguing the petition was untimely, as it was not filed at defendant's first appearance

3

before a judge, which occurred months prior in juvenile court. See *id.* § 110-6.1(c)(1). Defendant contended his transfer from juvenile to criminal court had no bearing on the matter.

¶ 7    On May 13, 2025, the court held a hearing and first addressed defendant's motion to strike the State's petition to deny pretrial release. Defense counsel reiterated his position that the State failed to file its petition at defendant's first appearance before a judge. The State responded that the petition was timely filed upon defendant being transferred and charged in criminal court. The court denied the motion, finding the State's petition to deny pretrial release was timely because it pertained to those being charged in criminal court, while the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2024)) had its own rules for who will be detained.

¶ 8    The court then proceeded to rule on the State's petition. The State provided its factual basis and argued defendant was a danger to society and D.B. Defendant was 17 years old with a prior adjudication and had a history of fighting in juvenile detention facilities, stealing cars, possessing firearms, and the conduct that led to the instant charges. The State further argued no conditions were available to mitigate the threat defendant posed. Defense counsel argued for home detention and GPS monitoring, providing defendant would stay with his mother in Kankakee and it would be beneficial to remove defendant from his current environment. The court found by clear and convincing evidence that the presumption was great defendant committed a detainable offense. The court noted the State met its burden with the factual basis and a grand jury had returned a bill of indictment. The court also found defendant posed a real and present threat to the safety of the community and no conditions could mitigate this threat. The court noted defendant's conduct outside of the detention center included AUUW and defendant's conduct inside the detention facility included an incident where there was probable

cause to believe he committed an attempted murder by inflicting a brutal beating. The court reasoned that, if individuals could not be protected from defendant while in the detention center, there was no reason to believe the community could be protected upon defendant's release. Thus, the court granted the State's petition to deny pretrial release.

¶ 9    On June 10, 2025, defendant filed a motion for relief, arguing the court erred in finding the State's petition was timely and that no conditions could be imposed to mitigate any threat he posed. Following a hearing, the court denied the motion. Defendant appeals.

¶ 10                                II. ANALYSIS

¶ 11    On appeal, defendant stands on his motion for relief in lieu of a memorandum (see Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024)) wherein he argued (1) the State's petition to deny pretrial release was untimely and (2) the State failed to prove by clear and convincing evidence that no conditions could mitigate any threat he posed. We address each contention in turn.

¶ 12                        A. Timeliness of the State's Petition

¶ 13    The question of whether the State's petition to deny pretrial release was timely upon the transfer of prosecution from juvenile court to criminal court presents an issue of statutory construction. When evaluating a statute, our objective is to ascertain and give effect to the intent of the legislature. *People v. Fair*, 2024 IL 128373, ¶ 61. Our most reliable indicator of the legislature's intent is the plain and ordinary meaning of the language itself. *Id.* "We view the statute as a whole, construing words and phrases in connection with other relevant statutory provisions rather than in isolation, while giving each word, clause, and sentence of a statute a reasonable meaning, if possible, and not rendering any term superfluous." *Id.* We review questions as to statutory construction *de novo*. *People v. Muhammad*, 2025 IL 130470, ¶ 35.

¶ 14            Defendant was initially charged as a juvenile, retained in custody, and subject to proceedings for delinquent minors as prescribed in the Juvenile Court Act. The Juvenile Court Act has its own provisions to determine whether a minor should be retained in custody. See 705 ILCS 405/5-415 (West 2024). Proceedings under the Juvenile Court Act are not criminal despite the delinquency proceeding retaining some adversarial aspects. *In re W.C.*, 167 Ill. 2d 307, 320 (1995). Accordingly, "[t]he [Juvenile Court] Act contains no statement incorporating general criminal practice rules or the provisions of the Code." *Id.* at 322. Our supreme court "has recognized the unique nature of juvenile proceedings and the value of retaining a distinction between the juvenile and criminal processes." *People v. Woodruff*, 88 Ill. 2d 10, 19 (1981).

¶ 15            In this case, after juvenile proceedings commenced, the court granted the State's motion for a discretionary transfer to prosecute defendant under criminal law. See 705 ILCS 405/5-805(3)(a) (West 2024). Therefore, defendant became subject to the adult criminal process, and what was previously a delinquency proceeding became a criminal proceeding. See *Woodruff*, 88 Ill. 2d at 19 ("The adult criminal process is not imposed upon the juvenile until the outcome of a transfer hearing which authorizes prosecution as an adult."). The grand jury then returned a bill of indictment, and the State filed its criminal complaint and petition to deny pretrial release.

¶ 16            Under the Code, specifically under article 110 as amended by what is commonly known as the Pretrial Fairness Act (725 ILCS 5/art. 110 (West 2024); Pub. Act 101-652 (eff. Jan. 1, 2023); Pub. Act 102-1104 (eff. Jan. 1, 2023)), the State may file a petition to deny a defendant pretrial release at the first appearance before a judge without notice to defendant or within 21 days after arrest and release with reasonable notice to defendant. *Id.* § 110-6.1(c)(1). Here, defendant argues, because he was never released, the State was required to file its petition to

deny pretrial release at his first appearance before a judge, which occurred in juvenile court months before the State filed its petition in criminal court. We disagree.

¶ 17 When defendant first appeared before a judge, the prosecution occurred under the Juvenile Court Act, which we already detailed has its own process for determining whether a minor should be retained in custody. See 705 ILCS 405/5-415 (West 2024). At this juncture, the State had no legal basis to file a petition to deny pretrial release under article 110 of the Code because the custody provisions under the Juvenile Court Act controlled. It was not until the court authorized prosecution under criminal law that the State had a legal basis to file a petition to deny pretrial release. In other words, the court's transfer of the matter to criminal court was a triggering event that subjected defendant to the Code. See, *e.g.*, *People v. Kurzeja*, 2023 IL App (3d) 230434, ¶ 14 (when a defendant who was arrested before the implementation of the Pretrial Fairness Act files a motion to modify pretrial release conditions, it constitutes a triggering event, and the State may file a responsive petition to deny pretrial release). Thus, the State's petition to deny pretrial release was timely filed upon the transfer to criminal court. This distinction between juvenile and criminal processes is in keeping with our supreme court's position that, "[i]f the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence." (Internal quotation marks omitted.) *People v. Taylor*, 76 Ill. 2d 289, 307 (1979).

¶ 18 In reaching this conclusion, we note defendant points to no language in the Code or the Juvenile Court Act that suggests article 110 of the Code, as amended by the Pretrial Fairness Act, applies to those being prosecuted under the Juvenile Court Act or that it somehow overrides the process prescribed in the Juvenile Court Act as it pertains to custody. This omission is

7

unsurprising, considering the long-standing and purposeful distinction between juvenile and adult prosecutions.

¶ 19                                    B. Conditions

¶ 20        Defendant also argues the court erred in finding no conditions could mitigate any threat defendant posed. Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that the defendant committed a detainable offense; (2) the defendant poses a real and present threat to any person, persons, or the community or is a flight risk; and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court can consider. See *id.* §§ 110-5, 110-6.1(g); *People v. Mikolaitis*, 2024 IL 130693, ¶¶ 20-21. Where no live witness testimony was presented at the hearing, such as here, we review the court's decision *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 21        Here, the evidence presented indicated that defendant and Burbridge planned and carried out a violent attack on D.B. in a detention facility. Defendant and Burbridge approached D.B. from behind and repeatedly punched him. D.B. fell to the ground and did not move or defend himself. Defendant and Burbridge stomped on D.B.'s head and kicked D.B. repeatedly as he was motionless on the ground. A staff member ordered defendant to lockdown, and he did not comply. Defendant had to be removed from the room. As a result of the attack, D.B. suffered a traumatic brain injury, is nonverbal, has been placed on a ventilator, uses a feeding tube, and is not expected to survive. Defendant had carried out a similar attack against another detainee,

8

Peanut, a month prior. This other attack was seemingly influenced by gang affiliation. Defendant's history also included an adjudication for AUUW where he served a sentence of 10 months in the Illinois Department of Juvenile Justice and an arrest for mob action. This evidence demonstrates defendant posed a threat to the community. The statute provides factors the court can consider when considering the conditions of release, and the State presented evidence of such factors, including the nature and circumstances of the offense and the history and characteristics of defendant. See 725 ILCS 5/110-5 (West 2024). Defendant had a violent history and committed this offense while in a detention facility, thus showing that he may not follow edicts of the court. Therefore, the court did not err in finding that no conditions would prevent defendant from continuing to be a threat and detaining defendant.

¶ 22                                    III. CONCLUSION

¶ 23        The judgment of the circuit court of Will County is affirmed.

¶ 24        Affirmed.

*People v. Maxwell*, 2025 IL App (3d) 250304

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 25-CF-729; the Hon. Amy M. Bertani-Tomczak, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Therese Bissell, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |